# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LITTLER MENDELSON, P.C., a California Professional Corporation, | Case No. 1:21-cv-3855-MLB |
| Plaintiff, | |
| vs. | |
| MELISSA MANN, a Florida resident AND POLSINELLI P.C., a Missouri Professional Corporation, | |
| Defendants. | **JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT
## FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Littler Mendelson, P.C. ("Littler" or the "Firm"), by this Second Amended Complaint for Damages and Injunctive Relief against Defendants Melissa Mann ("Mann") and Polsinelli P.C. ("Polsinelli") (collectively "Defendants"), states and alleges as follows:

## INTRODUCTION

1.     Littler is compelled to bring this action against Melissa Mann, a former employee, because she removed the Firm's intellectual property, confidential information, and/or privileged information (collectively, "Information") without authorization just prior to leaving Littler to join Polsinelli.

2.     Litter brings this action against Polsinelli, a direct competitor, because it enticed Mann, Angelo Spinola ("Spinola"), William Vail ("Vail") and/or Anne

Mellen ("Mellen") (collectively "Former Littler Employees") to secretly and without authorization share the Firm's Information for the benefit of Polsinelli by making certain promises of employment in return for their assistance in advancing Polsinelli's home healthcare law practice. Polsinelli interfered in Littler's contractual relationships with Former Littler Employees and Littler's business relationships with existing and prospective clients to its own benefit.

3.      Former Littler Employees engaged in wrongful conduct to the benefit of themselves and Polsinelli. Each step of the way, Polsinelli was either complicit in or actively facilitated their wrongful conduct. Polsinelli solicited, recruited, and hired Former Littler Employees knowing that it would obtain Littler's confidential information and trade secrets and that it also would have a direct path to Littler clients and contacts.

4.      This Second Amended Complaint alleges claims for relief seeking damages from Mann and Polsinelli, the return or permanent destruction of the Information that Mann and Polsinelli removed or received without authorization, and a permanent injunction preventing Mann and Polsinelli and any person or entity acting in concert with them from using or otherwise benefitting from the Information that was improperly transferred, and/or utilized by Mann and Polsinelli.

## PARTIES AND JURISDICTION

5.     Littler is a citizen of the State of California.  It is a professional corporation organized under the laws of the State of California, with a principal place of business located at 333 Bush Street, 34th Floor, San Francisco, California, 94104.

6.     Littler's attorneys provide the Firm's clients with representation and daily advice exclusively in the area of labor and employment law.

7.     Mann is a citizen and current resident of the State of Florida.

8.     Mann is a former Littler employee who provided paralegal and administrative management services to Firm attorneys in its Home Healthcare Practice including, without limitation, supporting Littler's Home Care Toolkit ("the Toolkit"), a subscription based online resource available to Littler's clients. While employed at Littler, Mann worked remotely from her residence in St Petersburg, Florida, for the Firm's office located at 3424 Peachtree Road NE, Suite 1200, Atlanta, Georgia 30326.

9.     Mann is believed to have copied and/or transferred documents associated with the Toolkit onto personal storage devices.

10.     Littler has expended fees and costs in excess of $75,000 to develop the Toolkit and the anticipated revenue from the documents associated with the Toolkit exceed $75,000 annually.

11.     Polsinelli is a citizen of the State of Missouri.  It is a professional corporation organized under the laws of Missouri, with a principal place of business at 900 West 48th Place, Suite 900, Kansas City, Missouri 64112.

12.     Polsinelli's attorneys provide legal services in the following areas: labor and employment, health care, financial services, real estate, intellectual property, middle-market corporate, and business litigation.

13.     While Polsinelli is a national law firm, Former Littler Employees were hired to work in Polsinelli's Atlanta office, which is located at: One Atlantic Center, 1201 W Peachtree St NW, Suite 1100, Atlanta, GA 30309.

14.     Spinola, Vail, and Mellen continue to work in Polsinelli's Atlanta office.

15.     Littler seeks damages and injunctive relief in excess of $75,000.00.

16.     Because Littler, Mann, and Polsinelli are citizens of different states, and the amount in controversy exceeds $75,000, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1).

17.     Because a substantial part of the events or omissions giving rise to Littler's claims occurred in this judicial district, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

# FACTUAL BACKGROUND

## LITTLER MENDELSON, P.C.

18.     Littler is and was, at all times relevant to these proceedings, engaged in the specialized practice of providing clients with labor and employment legal representation. Given the client-based nature of the Firm's work, it has created and maintains a plethora of Information to aid in its client work and in its efforts to grow its client base.

19.     The confidential nature of Littler's work is essential to the continued success of the Firm. The Information includes client confidential information that represents investments of hundreds of thousands of dollars in time and expense. The Information also provides the Firm with a competitive advantage not enjoyed by other law firms or persons. Access to the Information is available to Firm personnel only for the purpose of performing each individual's job duties at Littler. Mann nor Polsinelli have any ownership interest in the Information.

20.     The Information is critical to maintaining client trust and relations and, accordingly, Littler takes a number of steps to protect its confidential nature. Such steps include (a) promulgating and enforcing policies relating to information security, systems access, and device use; (b) implementing electronic security measures, such as the use of passwords, and limiting access to those with a demonstrable need for access; (c) marking Littler documents with the appropriate

level of confidentiality; and (d) employing physical security measures, such as placing locks on offices, doors, and file cabinets.

## LITTLER EMPLOYEE POLICIES

21.     Littler has an Employee Handbook for Non-Attorneys (the "Handbook"), which outlines the Firm's personnel policies, procedures and related programs applicable to all non-attorney employees, including Mann at the time she was employed at Littler.

22.     On February 5, 2019, Mann executed an acknowledgement affirming, among other things, that:

> I have received a copy of Littler Mendelson's Employee Handbook for Non-Attorneys. I understand I am responsible for reading and understanding the information and for adhering to the policies stated in the Handbook.
>
> * * *
>
> I agree to read and follow future revisions and updates and to keep my copy of the Handbook up to date.
>
> * * *
>
> I further understand that I may make use of the Firm's telephone, duplication and other services and resources in accordance with the Firm's policies.
>
> * * *
>
> I further agree that this Handbook supersedes all prior representations and/or policies.

23. The Handbook specifically states that it is "intended to be a guide to the terms and conditions of [Mann's] employment."

24. Among other things, the Handbook provides that:

Electronic Resources

Computer, telephone, voicemail, e-mail, facsimile, photocopy, Internet and Intranet access, collectively referred to as "electronic resources" have been provided to Firm employees *for the benefit of the Firm and its clients, vendors and suppliers*. (Emphasis added).

\*\*\*

Attorneys and other employees should use the Firm's electronic resources with the understanding that those resources are provided for the benefit of the Firm's practice. Accordingly, attorneys and other employees should use those electronic resources to further Littler's ability to conduct its business and in a manner that is consistent with the performance of their duties and responsibilities.

\*\*\*

Attorneys and other *employees should never use the Firm's electronic resources for personal use* in a manner that interferes with work or any responsibilities to clients or colleagues. (Emphasis added.)

\*\*\*

Ownership of Work Product

All work product, including letters, memoranda, presentations, e-mail and all other documents, whether hard copy or on disk, is the property of the Firm and is protected by federal copyright law, and *may not be taken or transferred from the Firm premises for the employee's personal use*, unless the employee receives prior written authorization from his/her Office Managing Shareholder. (Emphasis added.)

* * *

Computer Systems and Security

All computers and the data stored on them are and remain at all times the property of the Firm.

25. The Handbook defines as "Prohibited Conduct" each of the following:

Unauthorized use of Firm equipment, time, materials, facilities or the Firm name.

* * *

"Unauthorized review of files, dissemination of passwords, damage to systems, removal of files, removal of programs or improper use of information contained in computer or communication systems."

26. Littler also has an established Employee Information Governance Policy (the "Policy") to ensure that the Firm meets its legal and ethical obligations to protect client confidences and secrets of the Firm and its clients. The Policy applies to all employees (staff or attorneys) who have access to Firm Information. Specifically, the Policy provides:

Protecting Firm Information: Confidentiality: You may have access to sensitive client or other Firm information. The fact you have the ability to access information does not necessarily mean you should access this information. *You must only access information available to you when necessary to perform your job duties*. (Emphasis added).

* * *

No Personal Accounts or Devices: *You may use only Littler-owned devices and e-mail accounts to store,*

- 8 -

> *process, or transmit Littler Information.* Never forward Firm information to your personal email accounts. These personal email accounts, as well as any personal computers, smartphones or tablets do not provide the level of security necessary to protect Firm information. (Emphasis added).

∗∗∗

> <u>Removable Storage</u>: If it is necessary to store Firm information on removable storage, you must do so only in accordance with the handling controls described in the Information Classification and Handling Matrix. Such storage devices must be Firm-owned. *Never use personally owned storage devices to store Firm information.* (Emphasis added).

27. The Policy delineates how information and files are classified and labeled, as well as how employees should proceed if classification is unclear: "If the classification of any information you come into contact with is not clear from its title, other labeling, or context, you should treat that information as Confidential...."

28. Additionally, the Policy provides the confidential nature of information classified as "Internal" remains so for three (3) years beyond the end of employment and information that qualifies as trade secrets remains confidential so long as the information continues to qualify as a trade secret.

## **MANN AND LITTLER**

29. Mann worked for Littler for two years, until she resigned and her employment terminated on February 19, 2021. Among her roles, Mann was the Home Care and Franchise Toolkit Manager at Littler. Mann supported the needs of Littler attorneys in advising clients in the home care space, including assisting with

maintaining and managing attorney work product, attorney-client communications, and client-sourced documents and materials.

30.     While at Littler, Mann specifically supported the practices of Spinola, Vail and Mellen, all of whom are former Littler shareholders.

31.     Given the nature of Mann's employment, she maintained access to the Information. Included among the Information to which Mann had access was the Home Care "Toolkit" – a shared services subscription legal product that the Firm developed.

32.     Both while working remotely from her Florida residence and when in person in Littler's Atlanta office, Mann accessed the Information from Littler's information systems including, without limitation, databases, servers and share drives located in Atlanta, Georgia.

33.     Littler is informed and believes and therefore alleges that, on or before January 23, 2021, Mann received and accepted an offer from Polsinelli to join that firm in a capacity identical to or very similar to her capacity at Littler.

34.     Littler is informed and believes and therefore alleges that Polsinelli solicited Mann and other Littler employees including, without limitation, Spinola, Vail and Mellen, for information regarding Littler's Toolkit product for the creation of its competing product, Polsinelli Online Solutions for Home Care ("POSH").

35.     Mann did not notify Littler that she had accepted employment with Polsinelli until February 19, 2021.

## MANN'S UNAUTHORIZED REMOVAL OF LITTLER'S INFORMATION

36.     On her own initiative, at the request of other departing attorneys, or both, Mann repeatedly accessed the Firm's IT systems and transferred Information to personal devices, email addresses, and storage accounts. Her apparent purpose in doing so was to leverage the Information to support Polsinelli's home care law practice as well as the practices of Spinola, Vail and Mellen at Polsinelli.

37.     In view of the Information Littler entrusted to Mann's care, Littler reposed trust and confidence in her. She owed Littler fiduciary obligations (a) to act in the best interests of Littler, (b) not to use or disclose the Information, and (c) to refrain from misappropriating or disclosing the Information post-employment.

38.     As an employee who worked closely with attorneys on client matters, Mann had knowledge of and access to Littler's paper and electronic files for Littler business purposes. These included Firm financial information, client contacts and preferences, confidential Firm and client business and legal information, and information regarding the development of new products and services. All of such information derives significant independent economic value from not being generally known to the public or Littler's competitors.

39.     After she accepted Polsinelli's offer of employment, Mann secretly began taking steps to aid the home care law practice at Polsinelli. To further that effort, Mann downloaded or emailed hundreds of files comprising or containing the Information to her personal storage devices and personal email account.

40.     On information and belief, on or before February 12, 2021, Polsinelli solicited and received multiple documents from Spinola and Mann constituting Littler's work product, confidential information, client information, and trade secrets.  These documents include a "Home Care Toolkit Subscription Database 2.12.21.XLSX," "Toolkit Subscribers 2.11.21.CSV," and "Homecare Practice Group Brochure Draft.docx."  The "Home Care Toolkit Subscription Database 2.12.21.XLSX" document, in particular, is an Excel spreadsheet containing confidential Littler Information such as Littler's client pricing information.

41.     Mann neither sought nor received authorization from Littler to transfer the Information to her portable storage devices and personal email account. Doing so violated the plain terms of Littler's Handbook and Policy.

## POLSINELLI AND LITTLER'S CLIENTS, HOME CARE TOOLKIT AND FORMER EMPLOYEES

42.     On information and belief, Mann, while still a Littler employee, began interviewing for a position at Polsinelli around December 2020.

43.     On information and belief, on or about January 23, 2021, Mann received and accepted an offer of employment from Polsinelli to join in a capacity virtually identical to her role at Littler.

44.     Mann did not tender her resignation to Littler until February 19, 2021; Mann was then terminated that same day.

45.     On information and belief, while still a Littler Shareholder, Spinola formally accepted an offer of employment on November 19, 2020 to join Polsinelli as a Shareholder.

46.     Spinola did not tender his resignation to Littler until February 15, 2021.

47.     Littler terminated Spinola on March 16, 2021.

48.     On information and belief, Polsinelli hired Mann and Spinola for the sole purpose of converting clients and projects from Littler to Polsinelli.

49.     At the express request or implied behest of Polsinelli, Former Littler Employees transferred Littler Information and client files from Littler's electronic document storage sites and email system to Polsinelli's systems while still in the employ of Littler.

50.     On information and belief, Former Littler Employees collaborated with Polsinelli, while still Littler employees, to target Littler's contacts and existing clients and actively diverted clients' labor and employment matters from Littler to Polsinelli.

51.     Specifically, between October 2020 and February 2021, Polsinelli exchanged emails, drafted engagement letters, and/or engaged in client meetings with Mann and Spinola for the sole purpose of poaching existing and prospective Littler clients, including but not limited to Arosa; Brightstar; Carolina Hearts Home Care; Custom Home Health; Healthcare Research LLC d/b/a mycnajobs.com; Home Care Assistance Program; Kukui Na Kapuna d/b/a Home Instead #797; Moral Home Services d/b/a Assisting Hands; Nextcare d/b/a Brightstar Care At Home; ShareCare.com; Sterling Care, LLC; and Synergy Home Care, LLC by leveraging Spinola's prior work and/or contact with them as a Littler Shareholder to encourage such clients to transfer their work to Polsinelli.

52.     On information and belief, on or before January 10, 2021, Polsinelli solicited and received a link to the proprietary and confidential Littler Toolkit demo, which provided Polsinelli with the necessary foundation to create POSH, a competing technological platform to the Littler Home Care Toolkit.

53.     Under no circumstance was Mann or Spinola authorized by Littler to share Firm proprietary and confidential information with Polsinelli, a direct competitor.

54.     The competitive advantage held by Littler by and through its innovative creation of the Littler Home Care Toolkit was thwarted by Mann's and Spinola's unauthorized and unlawful disclosure of such information.

55. On information and belief, on or before January 31, 2021, Polsinelli in collaboration with Former Littler Employees, approved pitch materials to send to Spinola's Littler clients and contacts for the purpose of converting existing Littler clients into Polsinelli clients.

56. On information and belief, on or before February 9, 2021, Polsinelli began collaborating with Spinola, Mann, and Vail on Polsinelli marketing materials, specifically related to its technological platforms. Spinola, Mann, and Vail were solicited to provide feedback on draft information to be included on Polsinelli's website, which states, in relevant part: "We have developed *a toolbox* that provides our home health home care and hospice clients a source for industry information and template documents, with the goal of expanding this service to other industries, particularly in the franchising world."

57. On information and belief, this "toolbox" referenced by Polsinelli consists in whole or in part of Littler's confidential, privileged, proprietary, trade secret and/or client material constituting the Littler Home Care Toolkit.

58. On information and belief, on or before February 12, 2021, Polsinelli solicited and received multiple documents from Mann and Spinola constituting Littler's work product, confidential information, client information, and trade secrets. These documents include, without limitation, a "Home Care Toolkit Subscription Database 2.12.21.XLSX," "Toolkit Subscribers 2.11.21.CSV," and

"Homecare Practice Group Brochure Draft.docx." The "Home Care Toolkit Subscription Database 2.12.21.XLSX" document, in particular, is an Excel spreadsheet containing confidential Littler Information such as Littler's client pricing information.

59.     On information and belief, on or before February 16, 2021, Polsinelli collaborated with Former Littler Employees to create a client outreach plan that was designed to optimize the number of clients, who transferred their representation from Littler to Polsinelli.

60.     On information and belief, this outreach plan was based in whole, or in part, on a confidential client and assignment list maintained by Littler and managed by Spinola for Littler business purposes.

61.     The Former Littler Employees never notified Littler of their intent to share Littler Information with Polsinelli nor did they receive Littler's authorization to do so.

62.     Polsinelli never received authorization from Littler to procure, possess, and/or utilize the Information.

63.     Polsinelli then used the Information to its own benefit to: (1) procure existing Littler clients; (2) gain a competitive advantage over Littler in the home healthcare space by diverting prospective Littler clients; and (3) enhance its home healthcare law practice and to develop POSH, which on information and belief is

substantively identical to and specifically designed to compete with the Littler Home Care Toolkit.

## POLSINELLI AND LITTLER'S CORRIDOR PROJECT

64.     The Corridor Group, Inc. ("Corridor") provides home health and hospice providers a variety of products and services, including eLearning opportunities, job descriptions, home health operations manuals, audit tools, licensing assistance or information, and various other employment and operations related policies and procedures.

65.     While a Littler shareholder, Spinola led negotiations with Corridor about creating software for content relating to home healthcare industry licensing, rules and regulations for the mutual benefit of Littler, Littler's clients and Corridor ("the Corridor Project").

66.     In furtherance of the Corridor Project, Spinola directed multiple Littler attorneys and paralegals to incur hundreds of thousands of unreimbursed billable time from December 2020 through February 2021.  This work entailed developing content for the Corridor Project including highly-detailed, home care specific employment law summaries for all 50 states for home care and hospice providers.

67.     Spinola directed these Littler attorneys and paralegals to undertake this work despite signing Polsinelli's offer letter on November 19, 2020, approximately two weeks ***before*** the work began.

68. Littler attorneys continued to work on the Corridor Licensing Project under Spinola's direction until that work was completed on February 10, 2021.

69. On information and belief, between February 1st and February 11th 2021, Polsinelli, Spinola and Mann scheduled a meeting with Corridor. Polsinelli also executed a Mutual NDA Agreement with Corridor to facilitate the exchange of confidential information.

70. On February 19, 2021, Mr. Spinola notified Littler for the first time of his intent to withdraw from the Firm.

71. Polsinelli used the Information developed by Littler in furtherance of the Corridor Project to its own benefit to: (1) procure existing Littler clients; (2) gain a competitive advantage over Littler in the home healthcare space by diverting prospective Littler clients; and (3) enhance its home healthcare law practice and to develop or augment POSH, which on information and belief is substantively identical to and specifically designed to compete with the Littler Home Care Toolkit.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF FIDUCIARY DUTY / DUTY OF LOYALTY
#### (Against Defendant Melissa Mann)

69. Littler re-alleges and incorporates by reference paragraphs 1 through 68 of its Second Amended Complaint as if fully set forth herein.

70.    By reason of Mann's employment, retention of confidences, and Littler reposing its trust and confidence in her as alleged above, Mann owed Littler a duty of loyalty and fiduciary obligations to access and use the Information for the sole purpose of furthering the interests of the Firm and its clients.

71.    Mann breached her duty of loyalty to Littler by misappropriating the Information, doing so to further her and other departing employees' surreptitious plan to leverage the Firm's property for the purpose of helping port the home care practice over to Polsinelli, and to help Polsinelli serve those clients who followed Mann and other departing Littler employees over to that firm.

72.    For the same reasons, Mann breached her fiduciary obligations to Littler to access and use the Information only for the purpose of furthering the interests of the Firm and its clients.

73.    As a direct and proximate result of Mann's breaches of her duty of loyalty and her fiduciary obligations to Littler, Littler has suffered and will continue to suffer damages in the form of lost work product, confidential business information, trade secrets and intellectual property, lost business, lost revenue, lost goodwill, compensatory damages, and other immeasurable and irreparable injuries.

74.    Based on the foregoing wrongful conduct by Mann—which was knowing, willful, intentional, reckless and/or grossly negligent—Littler is entitled to an award of compensatory damages, punitive damages, and equitable relief.

## COUNT II
## REPLEVIN
## (Against Defendant Melissa Mann)

75.     Littler re-alleges and incorporates by reference paragraphs 1 through 74 of this Second Amended Complaint as if fully set forth herein.

76.     Littler and/or Littler's clients have a valid ownership, confidentiality, or trade secret interest in the Information.

77.     Mann has unlawfully and continuously failed to (a) provide a complete inventory and/or (b) return all the Information that she misappropriated from Littler.

78.     Mann's misappropriations and her failures to account for or return the Information that she misappropriated from Littler interferes with the Firm's ownership interest in the Information.

79.     Plaintiff is entitled to possession of the Information, and to the damages caused by Mann's interference with Plaintiff's ownership interest.

## COUNT III
## TROVER
## (Against Defendant Melissa Mann)

80.     Littler re-alleges and incorporates by reference paragraphs 1 through 79 of its Second Amended Complaint as if fully set forth herein.

81.     Littler is the lawful owner of the Information and never consented to Mann's use or retention of the Information aside from Littler business purposes.

82.     Littler has repeatedly demanded Mann's return of the Information.

83.     Despite her ability to do so, Mann has refused to do so.

84.     Due to Mann's unlawful retention of the Information on her unauthorized computer hardware, Littler has a reason to believe a significant portion of its Information has been lost and/or destroyed.

85.     As a direct and proximate result of Mann's unlawful deprivation of the Information and Mann's tortious conduct that has resulted in the loss and/or destruction of portions of the Information, Plaintiff has suffered and will continue to suffer damages.

**COUNT IV**
**CONVERSION**
**(Against Defendant Melissa Mann)**

86.     Littler re-alleges and incorporates by reference paragraphs 1 through 85 of its Second Amended Complaint as if fully set forth herein.

87.     Littler is the lawful owner of the Information.

88.     Despite her unique ability to do so, Mann has failed to ensure that the Information is returned from all third parties to whom it has been disclosed and fully protected from disclosure or use by competitors.

89.     Mann purposefully and knowingly deprived Plaintiff of its lawful right of full possession of the Information, which remains under Mann's control.

90.     As a direct and proximate result of Mann's unlawful deprivation of the Information, Plaintiff has suffered and will continue to suffer damages.

91.     Based on the foregoing wrongful conduct by Mann—which was knowing, willful, intentional, reckless and/or grossly negligent—Littler is entitled to an award of compensatory damages, punitive damages, and equitable relief.

## COUNT V
## TORTIOUS INFERENCE WITH CONTRACTUAL RELATIONS
### (Against Defendant Polsinelli)

92.     Littler re-alleges and incorporates by reference paragraphs 1 through 91 of its Second Amended Complaint as if fully set forth herein.

93.     Polsinelli was aware that Spinola, Mann, Vail, and Mellen were Littler employees and solicited them into providing Littler Information in violation of their employment agreements.

94.     Polsinelli induced Former Littler Employees into violating their employment agreements with Littler by taking the Information, exploiting it to its own benefit, and refusing to return it.

95.     Polsinelli's actions interfered with Littler's employment agreements with Former Littler Employees, Littler has suffered and will continue to suffer damages in the form of wages and benefits paid to, but not earned by those former employees by way of lost business, lost revenue, lost goodwill, compensatory damages, and other immeasurable and irreparable injuries.

96.     Based on the foregoing wrongful conduct by Polsinelli, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Polsinelli

tortuously interfered with contractual relations, and Littler is entitled to an award of damages.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (Against Defendant Polsinelli)

97.  Littler re-alleges and incorporates by reference paragraphs 1 through 96 of its Second Amended Complaint as if fully set forth herein.

98.  Littler had an expectancy of continuing an advantageous economic and professional relationship with current and prospective clients through its Toolkit platform.

99.  Such expectancy included marketing materials and pitches to prospective clients and leveraging the Toolkit resources to the benefit of its current clients.

100.  Polsinelli was aware of Littler's competitive expectancy as it pertained to the Toolkit.

101.  Littler invested substantial time, money, and resources into the creation and marketing of the Toolkit and also the enhancement and support of its employees.

102.  These relationships contained the probability of future economic benefit in the form of profitable client billing and repeat business.

103.   Polsinelli was aware that Littler invested substantial time and money into creating and maintaining the Toolkit and marketing it to third parties and clients for subscriptions.

104.   Polsinelli knew that wrongfully taking Littler Information including information related to the Toolkit would disrupt and damage such business relationships with clients.

105.   Polsinelli's actions interfered with the business relationships of Littler, such that Littler is entitled to damages in an amount to be proven at trial.

## COUNT VII
## MISAPPROPRIATION OF TRADE SECRETS AND PROPRIETARY INFORMATION IN VIOLATION OF GEORGIA TRADE SECRET ACT O.C.G.A. § 10-1-760, ET SEQ.
### (Against Defendant Polsinelli)

106.   Littler re-alleges and incorporates by reference paragraphs 1 through 105 of its Second Amended Complaint as if fully set forth herein.

107.   As a result of Polsinelli's solicitation of information from Former Littler Employees, Polsinelli obtained access to Littler's confidential and proprietary information, including, but not limited to client files, Toolkit templates, client contact lists and other unique information to be used for legitimate Littler business purposes only.   This confidential and proprietary information constitutes trade secrets within the meaning of O.C.G.A § 10-1-761 (4).

108.   Littler exerts substantial, reasonable efforts to keep its confidential, proprietary, trade secret information a secret, which includes, by is not limited to, maintenance of confidentiality and non-disclosure policies and agreements.

109.   Littler derives economic value from such secrecy by depriving competitors of opportunities to use Littler's trade secrets to gain a competitive advantage.

110.   Polsinelli misappropriated Littler's trade secrets within the meaning of O.C.G.A § 10-1-761 (2) by using and disclosing the trade secrets in the creation of POSH.

111.   At all material times, Polsinelli understood this was Littler's confidential and proprietary information and had no property interest in such information.

112.   The trade secret information improperly obtained and used by Polsinelli is utilized by Littler, or intended for use by Littler, in interstate commerce.

113.   Through its involvement with Littler employees, Polsinelli utilized Littler's trade secret information for the unlawful economic benefit of itself.

114.   Polsinelli's misappropriation of Littler's trade secrets gave and continues to give Polsinelli an unfair and unjust advantage in the operation of a competing business.

115. Polsinelli's misappropriation of Littler's trade secrets entitles Littler to immediate injunctive relief and damages pursuant O.C.G.A § 10-1-762.

116. At all material times, Polsinelli has acted willful, maliciously, and in bad faith.

117. As a result of Polsinelli's misappropriation, Littler has suffered and will continue to suffer irreparable harm.

118. Littler is entitled to permanent injunctive relief to protect its trade secrets by (1) enjoining Polsinelli from using or disclosing Littler's trade secrets; (2) enjoining Polsinelli from altering or deleting Littler trade secrets to the extent they remain within Polsinelli's possession; and (3) requiring Polsinelli to turn over any and all copies of Littler's trade secrets to Littler to the extent they remain in Polsinelli's possession.

## COUNT VIII
## CIVIL CONSPIRACY
### (Against Defendant Polsinelli)

119. Littler re-alleges and incorporates by reference paragraphs 1 through 118 of its Second Amended Complaint as if fully set forth herein.

120. The conduct among Former Littler Employees and Polsinelli, jointly and severally, constitutes a civil conspiracy between and among them to engage in a concerted action for an unlawful and/or or inappropriate purpose.

121. Former Littler Employees and Polsinelli conspired and pursued a common purpose to solicit and divert Littler clients to Polsinelli using trade secret, confidential and proprietary business information, including but not limited to Littler's client and contacts lists as well as its Home Care Toolkit, and by misappropriating Littler's confidential and proprietary business information as previously described above.

122. This common purpose and scheme is evidenced by (1) Mann's hiring for the singular and sole purpose of diverting Littler clients to Polsinelli; (2) Former Littler Employees' intentional and targeted work on behalf of Polsinelli while still employees of Littler; (3) Spinola and Mann's improper transfer of Littler Information from its IT Systems to Polsinelli's IT systems for the sole purpose of advancing Polsinelli's home healthcare law practice; (4) Former Littler Employees' use of their personal Gmail accounts to conspire and facilitate work on behalf of Polsinelli, a direct competitor of Littler, while still employed by Littler as an employee; (5) Former Littler Employees' direct and intentional contact with existing Littler clients and Corridor on behalf of Polsinelli to pitch additional representation opportunities; and (6) Polsinelli's creation of POSH in collaboration with Former Littler Employees, a platform that is substantially identical to the Littler Homecare Toolkit, which all combine to demonstrate that Former Littler Employees and Polsinelli acted with malice and intent to deprive Littler of its lawful interest in its

proprietary and confidential information and to cause significant financial damage to Littler.

123. As a result of this conspiracy, Littler suffered and continues to suffer irreparable harm and damages, including but not limited to lost clients, lost sales, lost business goodwill and reputation, and lost business opportunities.

124. Littler is entitled to the following relief: (1) inventory and return of all Littler Information in Polsinelli's possession, custody or control; (2) permanent injunctive relief enjoining and restraining Former Littler Employees and Polsinelli from directly or indirectly conspiring to solicit, provide, accept any request to provide, or induce the termination, cancellation or otherwise interfering in Littler's business and improperly using or attempting to use Littler's trade secret and confidential and proprietary information; (3) damages to Littler for the actual losses caused by Former Littler Employees and Polsinelli's civil conspiracy; and (4) the grant of such other and further relief as this Court deems just, necessary and proper.

**COUNT IX**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY**
**(Against Defendant Polsinelli)**

125. Littler re-alleges and incorporates by reference paragraphs 1 through 124 of its Second Amended Complaint as if fully set forth herein.

126. As detailed above, Former Littler Employees violated their fiduciary duties and duties of loyalty to Littler. They violated those duties by, during and prior

to the end of their employment with Littler: (a) misappropriating Littler's trade secrets and other confidential information for the purpose of competing with Littler on behalf of Polsinelli, and (b) soliciting Littler clients and employees to do business with or join Polsinelli.

127.   Polsinelli, having actual or constructive knowledge of the fiduciary duty and duty of loyalty that Former Littler Employees owed to Littler, intentionally and improperly induced each to violate those duties by: (a) soliciting them to leave Littler for Polsinelli for the express purpose of obtaining for Polsinelli the confidential information and trade secrets belonging to Littler that are known by or were taken by Former Littler Employees, (b) inducing Former Littler Employees to use the confidential and proprietary information belonging to Littler, and (c) inducing Former Littler Employees to solicit Littler's clients and employees. In doing so, Polsinelli acted purposely and with malice with the intent to injure Littler, its competitor.

128.   By engaging in this conduct, Polsinelli has improperly, intentionally, and wrongfully aided and abetted Former Littler Employees, specifically Mann and Spinola, in their breaches of their respective fiduciary duty and duty of loyalty to Littler for its own benefit, without right or justification, and at the expense of Littler.

129. Polsinelli's actions, and Former Littler Employee's actions, as described above, have caused and, unless restrained, will continue to cause Littler

severe, immediate, and irreparable damage, including lost profits, other consequential damages, and irreparable damage to its reputation, client relationships, and goodwill of Littler, for which Littler has no adequate remedy at law.

130.   Littler is entitled to judgment in its favor, awarding:  (1) injunctive relief restraining Polsinelli from competing with Littler based on the fruits of the Defendants' unlawful and tortious conduct against Littler; (2) damages, including compensatory and punitive damages; and (3) such other legal and equitable relief as the interests of justice may allow.

**COUNT X**
**UNJUST ENRICHMENT**
**(Against Defendant Polsinelli)**

131.   Littler re-alleges and incorporates by reference paragraphs 1 through 130 of its Second Amended Complaint as if fully set forth herein.

132.   As a direct and proximate result of Polsinelli's unlawful conduct, it has been unjustly enriched and should be ordered to provide commensurate restitution to Littler.

133.   It would inequitable and unjust for Polsinelli to retain, without payment the pecuniary benefits it has gained from Former Littler Employees' theft of Littler's trade secrets, confidential information, and clients.

134.  This unjust enrichment includes value attributable to the misappropriated trade secrets and confidential information, amounts Polsinelli saved

in costs and development by using the misappropriated trade secrets and confidential information, increased productivity resulting from the use of the misappropriated trade secret and confidential information, and increased market share from the use of the misappropriated trade secret and confidential information.

135.    This unjust enrichment also includes the value attributable to the services that Former Littler Employees have provided to Polsinelli and any profits from services or work performed by Polsinelli for any clients solicited directly, indirectly, or with information from them.

136.    As a result of Polsinelli's actions, Littler has been damaged to an extent which currently cannot be calculated or ascertained but which includes lost profits, lost investment of money and resources, and ill-gotten profits Polsinelli derived from Former Littler Employees' theft of Littler's trade secrets and confidential information.

137.    There is no justification for Polsinelli's enrichment at Littler's expense, as the enrichment is solely derived from the unlawful theft of Littler's trade secrets and confidential information.

138.    Littler is entitled to judgment in its favor, requiring the Defendants to provide restitution to Littler in an amount commensurate to the value or amount that the Defendants have been unjustly enriched by their misconduct; and entry of an

award of: (1) damages, including compensatory and punitive damages, and (2) such other legal and equitable relief as the interests of justice may require.

## COUNT XI
## ATTORNEYS' FEES & COSTS PURSUANT TO O.C.G.A. § 13-6-11 AND O.C.G.A § 10-1-760 et seq.
### (Against All Defendants)

139.    Littler re-alleges and incorporates by reference paragraphs 1 through 138 of its Second Amended Complaint as if fully set forth herein.

140.    Mann and Polsinelli, through their above-described actions, have acted in bad faith, have been stubbornly litigious, and have caused Littler unnecessary trouble and expense.

141.    Mann and Polsinelli are liable for all reasonable attorneys' fees and costs incurred by Littler under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Littler prays for judgment that:

A.    Mann and Polsinelli be enjoined from using or disclosing the Information to any person;

B.    Mann and Polsinelli be directed to return to Littler all of the Information she misappropriated, including any copies, summaries, extracts, or excerpts, in whatever form stored or maintained;

C.    Mann and Polsinelli be directed to identify all Information that has been lost and/or destroyed;

D.    This Court issue an order for the accounting as to all persons to whom the Information, or any portion of it, has been disclosed by Mann and Polsinelli;

E.    This Court issue a permanent injunction preventing Mann and Polsinelli and any person or entity acting in concert with them from using or otherwise benefitting from the Information that was improperly transferred, and/or utilized by Mann and Polsinelli.

F.    Requires Mann and Polsinelli to pay compensatory and punitive damages to Littler in the amount to be fixed at trial, together with interest; and

G.    Awarding to Littler its costs and attorneys' fees incurred in connection with this action and other such relief as the Court deems just and proper.

H.    Littler demands trial by jury on all issues so triable.


March 9, 2022

Respectfully submitted,

*/s/ Dara D. Mann*
Dara D. Mann
Chelsea M. Dease
SQUIRE PATTON BOGGS
(US) LLP
One Atlantic Center
1201 W. Peachtree Street, NW
Suite 3150
Atlanta, Georgia 30309
Telephone:   (678) 272-3221
Facsimile:    (678) 272-3211
Dara.mann@squirepb.com
Chelsea.dease@squirepb.com

David S. Elkins
SQUIRE PATTON BOGGS
(US) LLP
1801 Page Mill Road, Suite 110
Palo Alto, California 94304
Telephone:   (650) 856-6500
Facsimile:    (650) 843-8777
David.elkins@squirepb.com

*Attorneys for Plaintiff Littler
Mendelson, P.C.*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned certifies that the brief has been prepared with one of the fonts and point selections approved by the Court in L.R. 5.1 (B).

*/s/ Dara D. Mann*
Dara D. Mann

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing **LITTLER MENDELSON, P.C.'S SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** to all counsel of record via the Court's CM/ECF system.

This 9th day of March 2022.

*/s/ Dara D. Mann*
  Dara D. Mann