## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LITTLER MENDELSON, P.C., a
California Professional Corporation,

          Plaintiff,

vs.

MELISSA MANN, a Florida resident
AND POLSINELLI, P.C., a Missouri
Professional Corporation,

          Defendant.

Case No. 1:21-cv-03855-MLB

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER,
## PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

I.  STATEMENT OF FACTS.................................................................................1

A.  LITTLER'S TOOLKIT CONTAINS WORK PRODUCT, CONFIDENTIAL AND PROPRIETARY INFORMATION OF SUBSTANTIAL VALUE...................................1

B.  POLSINELLI ENCOURAGED MR. SPINOLA AND MS. MANN TO DELAY NOTICE OF INTENT TO WITHDRAW FROM LITTLER AND EXTRACT CONFIDENTIAL AND PROPRIETARY INFORMATION FROM LITTLER FOR THE DEVELOPMENT OF POSH. ..................................................................................................5

C.  POLSINELLI KNOWINGLY WORKED TO CONVERT LITTLER'S TOOLKIT AND START A COMPETING PRODUCT. ....................................................................7

D.  POSH CONTAINS NUMEROUS IDENTICAL OR SUBSTANTIALLY IDENTICAL DOCUMENTS TO LITTLER'S KM CONTENT.......................................................9

E.  LITTLER'S EXTENSIVE EFFORTS TO RESOLVE THIS LITIGATION. ....................9

II.  ARGUMENT ..................................................................................................10

A.  A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE ESSENTIAL TO PREVENT IMMEDIATE AND ONGOING INJURY. ........................10

B.  STANDARD OF LAW FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.............................................................................12

  i.  Littler Has a Strong Likelihood of Success on the Merits for Its Claims................................................................................................13

    a.  Likelihood of Success on Tortious Interference with Contractual and Business Relations Claims (Count V & VI) ..13

    b.  Likelihood of Success on Misappropriation of Trade Secrets and Proprietary Information in Violation of Georgia Trade Secrets Act (Count VII) ............................................................15

    c.  Likelihood of Success on Civil Conspiracy (Count VIII) ........16

    d.  Likelihood of Success on Aiding and Abetting a Breach of Fiduciary Duty and Duty of Loyalty (Count IX).....................17

    e.  Likelihood of Success on Unjust Enrichment (Count X) .........19

  ii.  Littler is Suffering Irreparable Injury.................................................20

  iii.  The Balance of Hardship Tips in Littler's Favor ...............................22

  iv.  The Relief Sought Serves the Public Interest.....................................22

  v.  The Equitable Relief Sought Is Appropriate ......................................23

C.  EXPEDITED DISCOVERY IS NECESSARY TO REMEDIATE ONGOING, IRREPARABLE HARM. ......................................................................................23

III.  CONCLUSION ..............................................................................................25

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*ABG EPE IP, LLC v. A2027437353*,
No. 1:21-cv-1508-LMM, 2021 U.S. Dist. LEXIS 121765 (N.D. Ga.
Apr. 19, 2021) ................................................................................................ 11

*Advanced Polymer Tech. Corp. v. Textile Mgmt. Assocs.*,
No. 4:08-CV-0018-HLM, 2008 U.S. Dist. LEXIS 127621 (N.D. Ga.
Mar. 21, 2008) ............................................................................................... 12

*Alabama v. U.S. Army Corps of Eng'rs*,
424 F.3d 1117 (11th Cir. 2005) .................................................................... 12

*All Leisure Holidays Ltd. v. Novello*,
No. 12-62328, 2012 U.S. Dist. LEXIS 168774 (S.D. Fla. Nov. 27, 2012) ............... 11

*Angel Oak Mortg. Sols. LLC v. Mastronardi*,
No. 1:20-cv-4583-MLB, 2022 U.S. Dist. LEXIS 53476 (N.D. Ga. Mar.
23, 2022) ......................................................................................... 19, 20, 13

*Arclin United States v. Vits Tech. Gmbh*,
No. 1:20-cv-01197, 2020 U.S. Dist. LEXIS 256089 (N.D. Ga. Apr. 29,
2020) .............................................................................................................. 20

*Arista Records LLC v. Does 1-7*,
No. 3:08-CV-18 (CDL), 2008 U.S. Dist. LEXIS 13831 (M.D. Ga. Feb.
25, 2008) ........................................................................................................ 24

*Becham v. Synthes (U.S.A.)*,
No. 5:11-CV-73 (MTT), 2011 U.S. Dist. LEXIS 103841 (M.D. Ga. Sep.
14, 2011) ........................................................................................................ 16

*Benavides v. Gartland*,
No. 5:20-cv-46, 2020 U.S. Dist. LEXIS 90686 (S.D. Ga. May 20, 2020) ................. 24

*Boggs Contracting, Inc. v. Freismuth*,
No. 6:21-cv-2088-CEM-EJK, 2021 U.S. Dist. LEXIS 252335 (M.D.
Fla. Dec. 27, 2021) ........................................................................................ 21

*Campbell v. Ailion*,
    338 Ga. App. 382 (2016) ........................................................................ 19

*Car Body Lab v. Lithia Motors*,
    No. 21-cv-21484-MORE, 2021 U.S. Dist. LEXIS 115493 (S.D. Fla.
    June 21, 2021) ........................................................................................ 21

*Chef Merito v. Javier Gonzalez*,
    No. 1:20-cv-1242-AT, 2020 U.S. Dist. LEXIS 171934 (N.D. Ga. Aug.
    19, 2020) ............................................................................................... 16

*Chemicals & Servs., Inc. v. Chandler*,
    No. 1:87CV-2338-MHS, 1988 U.S. Dist. LEXIS 16090 (N.D. Ga. Sept.
    26, 1988) ............................................................................................... 25

*Cochran v. Murrah*,
    235 Ga. 304 (1975) ............................................................................... 17

*Crossfit, Inc. v. Quinnie*,
    232 F. Supp. 3d 1295 (N.D. Ga. 2017) ................................................. 22

*Cunningham Lindsey U.S. LLC v. Box*,
    No. 1:18-cv-04346-MHC, 2018 U.S. Dist. LEXIS 224774 (N.D. Ga.
    Oct. 23, 2018)........................................................................................ 23

*de Paz v. de Pineda*,
    361 Ga. App. 293 (2021) ...................................................................... 22

*Disaster Servs. v. Erc P'ship*,
    228 Ga. App. 739, 492 S.E.2d 526 (1997)........................................ 13, 14

*Hagler Sys. v. Hagler Group Global*, LLC,
    No. 120-026, 2020 U.S. Dist. LEXIS 74744 (S.D. Ga. Apr. 28, 2020) ..................... 11

*Harris v. Fulton-DeKalb Hosp. Auth.*,
    255 F. Supp. 2d 1347 (N.D. Ga.), *aff'd*, 48 F. App. 742 (11th Cir. 2022) ................. 17

*HCC Ins. Holdings, Inc. v. Flowers*,
    237 F. Supp. 3d 1341 (N.D. Ga. 2017) ................................................. 17

*Hope Lumber & Supply Co. v. San Antonio Lumber Co.*,
No. 8:05-CV-1558-T-30TGW, 2005 U.S. Dist. LEXIS 59995 (M.D.
Fla. Dec. 9, 2005) ........................................................................................... 24

*Insight Tech., Inc. v. FreightCheck, LLC*,
280 Ga. App. 19 (2006) ................................................................................. 18

*Johnson v. Bd. of Regents of Univ. of Ga.*,
263 F.3d 1234 (11th Cir. 2001) ..................................................................... 24

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004) ..................................................................... 12

*Larweth v. Magellan Health, Inc.*,
841 F. App. 146, 158-59 (11th Cir. 2021) .................................................... 21

*Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*,
298 Ga. 221 (2015) ........................................................................................ 14

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
No. 1:04-CV-1082-TWT, 2005 U.S. Dist. LEXIS 51313 (N.D. Ga. Sep.
13, 2005) ........................................................................................................ 17

*Priority Payment Sys., LLC v. Signapay LTD*,
161 F. Supp. 3d 1294 (N.D. Ga. 2016) ......................................................... 20

*Savannah Coll. of Art & Design v. Sch. of Visual Arts*,
219 Ga. App. 296 (1995) ............................................................................... 16

*Schiavo ex rel. Schindler v. Schiavo*,
403 F.3d 1223 (11th Cir. 2005) (per curiam) ............................................... 12

*Siegel v. LePore*,
234 F.3d 1163 (11th Cir. 2000) (en banc) ............................................... 12, 20

*TracFone Wireless, Inc. v. Adams*,
304 F.R.D. 672 (S.D. Fla. 2015) ................................................................... 24

*Variable Annuity Life Ins. Co. v. Joiner*,
454 F. Supp. 2d 1297 (S.D. Ga. 2006) .......................................................... 25

*Whitesource Software v. Coscina*,
   No. 21-21171-CV-UNGARO, 2021 U.S. Dist. LEXIS 65913 (S.D. Fla.
   Apr. 2, 2021) ........................................................................................................ 11

**Statutes**

Georgia Trade Secrets Act ..................................................................... 16, 19, 20

**Other Authorities**

Federal Rules of Civil Procedure Rule 65 ................................................. 10, 21

## INTRODUCTION

For more than one year, Plaintiff Littler Mendelson, P.C. ("Littler") diligently has engaged in extensive efforts to regain custody of its improperly removed work product, confidential, proprietary and/or trade secret information ("Littler Information") without undue burden on the court. Although Littler has successfully resolved its dispute Melissa Mann ("Mann"), Littler's extensive efforts to resolve its disputes with Defendant Polsinelli, P.C. ("Polsinelli) have proved unavailing. Accordingly, Littler now moves the Court for a temporary restraining order ("TRO"), preliminary injunction, and expedited discovery in order to curtail the continuing harm Littler suffers as a result of Polsinelli selling misappropriated Littler Information through the Polsinelli Online Solution for Homecare ("POSH"), an online platform intentionally designed by Defendant to mimic and compete with Littler's Home Care Toolkit ("Toolkit").

## I.    STATEMENT OF FACTS[1]

### A.    Littler's Toolkit Contains Work Product, Confidential and Proprietary Information of Substantial Value.

#### (1)    <u>The Toolkit contains proprietary information</u>.

---

[1] In support of this motion, Littler also relies upon and incorporates by reference all declarations submitted in support of its *Ex Parte* Motion for Temporary Restraining Order, Preliminary Injunction and Expedited Discovery against former Defendant Melissa Mann, Dkt. 7.

The Home Care Toolkit is a compilation of materials specially-curated by Littler for the home care industry. (Attached hereto as Exhibit 1, Vaughn Decl. ¶7.) It contains a selection of best-in-class templates, handbooks, and guidance documents including collections of key information for easy access that are either drafted or curated by Littler lawyers (including its Knowledge Management ("KM") Team and other Littler attorneys, paralegals, and professionals ("Littler's Toolkit Team[2]")) (collectively, "Toolkit materials"). (*Id.*) Some of the Toolkit materials are **exclusively drafted** by Littler's KM Team with input from Littler professionals ("KM content"). (*Id.* ¶ 8.) The Toolkit is continually updated to ensure it remains best-in-class. (*Id.* ¶ 9.)

## (2)   The Toolkit has substantial economic value which is being adversely impacted by POSH.

Over the seven years since its launch, Littler personnel have expended more than 7,000 hours developing and updating the Toolkit materials including its KM content representing a total monetary investment conservatively estimated as more than ███████ dollars. (*Id.* ¶ 6, 11.) Most of the content in the Toolkit is not available publicly. (*Id.* ¶ 12.) As a compilation, the Toolkit materials are only available to subscribers who pay an annual fee to access the information or to entities

---

[2] Angelo Spinola and Melissa Mann were part of Littler's Toolkit Team when they were employed at Littler. (*See* Vaughn Decl. ¶ 3.)

with whom Littler has an actual or prospective attorney-client relationship. (*Id.*) In 2020, the year prior to Mr. Spinola's and Ms. Mann's departure from Littler, the Toolkit had subscription revenue of more than ▮▮▮▮. (*Id.* ¶ 14.) However, in 2021, Toolkit revenue sharply declined to ▮▮▮▮. (*Id.* ¶ 15.)

Polsinelli actively has been soliciting Toolkit subscribers for POSH. (*Id.* ¶ 17.) Of the subscribers who have provided reasons for cancelling their Toolkit subscriptions in 2021 and 2022, many have stated that they are subscribing to POSH instead. (*Id.*) Preliminary information for the six-month period from January to June 2022 suggests that Toolkit subscribers and revenue are continuing to decline. (*Id.* ¶ 16.) Toolkit subscription cancellations so far for 2022 amount to approximately ▮▮▮▮ compared to revenues of ▮▮▮▮. (*Id.*)

In addition to subscriber revenue, a primary economic benefit of the Toolkit is that it is a brand differentiator for Littler in the home care industry and helps drive additional client revenue. (*Id.* ¶ 21.) Littler markets other legal services and packages it offers to Toolkit subscribers, an effort that historically has provided substantial opportunities for the Toolkit Team to cultivate clients from subscribers seeking assistance with non-Toolkit related legal services. (*Id.*) The Toolkit has driven client revenue conservatively estimated at more than $▮▮▮▮ for Littler. (*Id.*) The ongoing loss of Toolkit subscribers due to POSH also results in the loss of extremely

valuable Toolkit-driven client opportunities, client revenue, and a deterioration of Littler's brand in the home care industry. (*Id.*)

### (3)   Littler protects the Toolkit through its licensing agreement and copyright notices to subscribers.

Subscribers to the Toolkit must execute a written End User Licensing Agreement (the "Toolkit EULA") and/or agree to its terms by accepting the clickwrap licensing agreement when entering the online Toolkit. (*Id.* ¶ 13 and Ex. A thereto.) Although the Toolkit EULA exists in various formats (e.g. written, electronic, short-form, long-form), its key terms specifically provide as follows:

> 1.  Grant of License:  THE TOOLKIT IS LICENSED TO YOU, NOT SOLD. . . .
> ***
> 2.  Use Restrictions:  *You may not do any of the following*:
> - *sublicense the Toolkit to any third party, including without limitation . . . external legal advisors* . . .;
> -
> - deconstruct, adapt, reproduce, or *create derivate works of the Toolkit* . . . .
> ***
> 3.  COPYRIGHT AND OWNERSHIP:  *All title, ownership rights and intellectual property rights in and to the Toolkit . . . and any and all copies thereof are owned by Littler or its licensors.*
> ***
> 6.  THIRD PARTY BENEFICIARIES:  *No person other than a party to the EULA or commercial agreement can enforce or take the benefit of any of its terms.*

(*Id.*) (emphasis added).

- 4 -

Moreover, the works within the Toolkit which were developed by Littler's Toolkit Team bear a copyright legend, indicating that the document or resource is an original piece of work created by Littler. (*Id.* ¶ 10.)  That legend states: "**©** **[YEAR] Littler Mendelson, P.C. May not be reproduced or used by anyone other than the subscriber without the express written consent of Littler Mendelson.**" (*Id.*) (emphasis added).

> **B.     Polsinelli Encouraged Mr. Spinola and Ms. Mann to Delay Notice of Intent to Withdraw from Littler and Extract Confidential and Proprietary Information from Littler for the Development of POSH.**

Former Littler shareholder, Angelo Spinola, signed and returned his offer letter from Polsinelli on November 19, 2020. (Dkt. 7-2, Kiester Decl., Ex. B.) However, Mr. Spinola intentionally delayed providing Littler with notice of his intent to withdraw from the firm until February 15, 2021. (Attached hereto as Exhibit 2, Wood Decl., ¶ 5.) In the intervening three-month period (the "holdover period"), Polsinelli, acting in concert with Mr. Spinola and Ms. Mann, actively worked to draw clients away from Littler and to misappropriate Littler Information in an effort to kickstart POSH. *See generally* Plaintiff's Second Amended Compl. ("SAC").

For example, during the holdover period, Mr. Spinola, or others under his direction, initiated mass transfers of Littler Information, including KM content from the Toolkit, into purported "client files" on Littler's systems and subfolders within

said "client files" that were misleadingly titled "Documents Drafted by Client." (Wood Decl. ¶ 11.) Also during the holdover period, Mr. Spinola instructed Ms. Mann and others to download and/or transfer Littler Information to personal devices, personal email accounts and to Polsinelli in direct violation of Littler's policies. (SAC ¶¶ 34, 36.) In her October 21, 2021 deposition, Ms. Mann testified that, ███

███████████████████████████████████████████████████████████ (Attached hereto as Exhibit 3, Mann Decl., Ex. S at 109:18-25.) She admitted that she ████████████████████████████████████████████████

████████████████████████████ (*Id.* at 46:8-23.) Ms. Mann further testified that ███████████████████████████████████████████████████

███████████ (*Id.* at 52:3-54:16); and that she ██████████████████████

████████████████████████████ (*Id.* at 142:4-14). In particular, Ms. Mann testified that ████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████ (*Id.* at 64:18-65:7) and ███████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████ (*Id.* at 90:6-91:2).

Littler's examination of Ms. Mann's firm-issued laptop revealed that she transferred at least 257 confidential and proprietary documents to an external hard

drive on the dates of January 23, 2021 and February 19, 2021. (Dkt. 7, Keister Decl., ¶ 6, Ex. A and B.).  A further expert forensic examination of Ms. Mann's personal devices and email accounts revealed that, prior to joining Polsinelli, she transferred more than 12,000 documents from Littler's systems (Mann Decl. ¶ 18), all at Mr. Spinola's instruction and for the purpose of supporting his practice at Polsinelli and the development of POSH (*Id.*, Ex. S at 52:3-54:16; 142:4-14).  On February 12, 2021, Angelo Spinola transferred three documents from his Littler-issued laptop, ***all of which Polsinelli admits receiving***, including: (1) "Home Care Toolkit Subscription Database 2.12.21.XLSX" - a comprehensive spreadsheet containing information regarding Toolkit subscribers and pricing; and (2)  "Toolkit Subscribers 2.11.21.CSV" - a comprehensive spreadsheet listing more than 4,000 Toolkit subscribers.  (Compl. ¶ 40; Mann Decl. ¶¶ 8, 15, Exs. D and J.)

## C. Polsinelli Knowingly Worked to Convert Littler's Toolkit and Start a Competing Product.

During the holdover period, Polsinelli actively communicated with Mr. Spinola and Ms. Mann and worked with them both to solicit Littler clients and to develop POSH with Toolkit information. Mr. Spinola and Ms. Mann made numerous transfers of Littler Information in January and February 2021. (Dkt, 7-2, Kiester Decl., ¶¶ 5-7, Exs. A and B; Wood Decl. ¶¶ 6-7, 11; Mann Decl. ¶ 18.) These transfers occurred despite their awareness of the Toolkit EULA.  (Vaughn Decl. Ex.

A) (exemplar Toolkit EULA bearing Mr. Spinola's name and executed by subscriber on January 28, 2021.)  The transfers also occurred despite a December 21, 2020 email from Denise Drake, Polsinelli's Labor & Employment Department Chair, expressly cautioning them about the ownership and trade secret issues involved in the works he created at Littler:



(*Id.* ¶ 18, Ex. Q) (emphasis added).

Polsinelli encouraged Mr. Spinola's and Ms. Mann's actions in the express effort to develop POSH including through communications where they: (1) provided Polsinelli ████████████████████████████████ (Mann Decl., Ex. L); (2) emailed Polsinelli ████████████████████████ ████████████████████████ (*Id.* at Ex. M); (3) provided Polsinelli ████████████████████████████████████████ ████████████████████████████████████████ ████████████████ (*Id.* at Ex. N); (4) engaged in ████████████████ ████████████████████████████ with Polsinelli (*Id.* at Ex. O);

and sent Polsinelli ███████████████████████████████████████

██████████████████████████████████████████████████████

(*Id.* at Ex. P.)

Indeed, Ms. Mann's handwritten statement in her May 21, 2021 exit interview with Polsinelli boldly summarized their scheme:



(Mann Decl. ¶ 18, Ex. R) (emphasis added).

### D.   POSH Contains Numerous Identical or Substantially Identical Documents to Littler's KM Content.

On June 15, 2022, Littler's representatives conducted a limited, two-hour inspection of POSH. (Vaughn Decl. ¶ 18.) Of the documents inspected, the vast majority were either substantially identical (95%-100% match) or substantially similar (over 50% match). (*Id.*) On each document inspected, the Littler copyright legend had been replaced with a purported Polsinelli copyright legend. (*Id.* ¶ 20).

### E.   Littler's Extensive Efforts to Resolve this Litigation.

Both before and after filing this lawsuit against Ms. Mann and, later, Polsinelli, Littler has engaged in numerous good faith efforts to resolve its concerns without resort to the Court. These efforts culminated in a communication from

Polsinelli's counsel on July 12, 2022 that made it clear an out of court resolution with Polsinelli simply is not a viable option at this time. (Mann Decl. ¶ 20; Wood Decl. ¶ 10.) Littler's relentless efforts attempting resolution with Ms. Mann, Mr. Spinola and Polsinelli are addressed in the declaration of counsel submitted in support of this motion. (Mann Decl. ¶¶ 5-17 and 20, Exs. A-K.) As it is clear that voluntary resolution is not possible, Littler now moves to protect its interests in court without further delay.

## II.   ARGUMENT

### A.   A Temporary Restraining Order and Preliminary Injunction are Essential to Prevent Immediate and Ongoing Injury.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where it clearly appears from the "specific facts in an affidavit . . . that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." This is such a case.

The justification and necessity for the TRO and Preliminary Injunction are identical, namely preservation of evidence and preventing ongoing injury. Littler seeks a TRO directing Polsinelli to stop marketing and selling all Littler Information in its POSH platform and a preliminary injunction enjoining Polsinelli from using any Littler Information in POSH or otherwise.

- 10 -

Polsinelli worked in concert with Mr. Spinola, Ms. Mann and others to extract Littler Information for the primary purpose of enhancing its home healthcare practice and POSH platform. The entry of a TRO would serve to immediately stop Polsinelli from accessing, destroying, and/or further benefiting from the wrongful use of Littler's Information and preserve the status quo until such time as a hearing can be held. *See ABG EPE IP, LLC v. A2027437353*, No. 1:21-cv-1508-LMM, 2021 U.S. Dist. LEXIS 121765, at *2 (N.D. Ga. Apr. 19, 2021) (finding ex parte relief more compelling in instances where relevant evidence is primarily in electronic format and "subject to quick, easy, and untraceable destruction").

Federal courts in this Circuit have long recognized that civil actions against unauthorized access to computer databases and confidential information, and violation of trade secrets presents special challenges that justify proceeding on an *ex parte* basis. *All Leisure Holidays Ltd. v. Novello,* No. 12-62328, 2012 U.S. Dist. LEXIS 168774, at * 9, *16, (S.D. Fla. Nov. 27, 2012) (ex parte TRO issued for violations of trade secrets); *Whitesource Software v. Coscina,* No. 21-21171-CV-UNGARO, 2021 U.S. Dist. LEXIS 65913, at *9 (S.D. Fla. Apr. 2, 2021) (ex parte TRO issued to enjoin defendant from disclosing or soliciting Plaintiff clients and using or disclosing plaintiff's confidential information and trade secrets); *Hagler Sys. v. Hagler Group Global*, *LLC*, No. 120-026, 2020 U.S. Dist. LEXIS 74744, at

*33,*42 (S.D. Ga. Apr. 28, 2020) (granting preliminary injunction preventing defendant from copying and converting plaintiff's confidential and trade secret information). Littler requests similar relief from the Court in order to prevent the ongoing, irreparable harm discussed in Section I(A)(2) above.

**B.      Standard of Law for Temporary Restraining Order and Preliminary Injunction**

In this Circuit, the requirements for obtaining a temporary restraining order are the same as those for obtaining a preliminary injunction. *Advanced Polymer Tech. Corp. v. Textile Mgmt. Assocs.*, No. 4:08-CV-0018-HLM, 2008 U.S. Dist. LEXIS 127621, at *3 (N.D. Ga. Mar. 21, 2008). "To obtain a preliminary injunction, a movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) the preliminary injunction is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the preliminary injunction would inflict on the non-movant; and (4) the preliminary injunction would serve the public interest." *Id*; *see also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc); *accord Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam); *Klay v. United Healthgroup, Inc*., 376 F.3d 1092, 1097 (11th Cir. 2004).

i.      **Littler Has a Strong Likelihood of Success on the Merits for Its Claims**

a.      **Likelihood of Success on Tortious Interference with Contractual and Business Relations Claims (Count V & VI)**

"Tortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements:  (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Disaster Servs. v. Erc P'ship*, 228 Ga. App. 739, 740, 492 S.E.2d 526, 528 (1997) (citations omitted).

As more fully outlined in Sections I(B), I(C) and I(D) above, Polsinelli engaged in "improper action or wrongful conduct" by obtaining and selling Littler Information including, without limitation, purported "client file" documents subject to the Toolkit EULA. The Toolkit materials and information transferred by Mr. Spinola and Ms. Mann include both trade secret and non-trade secret information,[3]

---

[3] *Angel Oak Mortg. Sols. LLC v. Mastronardi*, No. 1:20-cv-4583-MLB, 2022 U.S. Dist. LEXIS 53476, at *9 (N.D. Ga. Mar. 23, 2022) ("If the legislature intended

all of which is proprietary to Littler, unavailable publicly and holds significant economic value. *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 298 Ga. 221, 230-31 (2015).

Moreover, Polsinelli had no "legitimate economic interest[]" or "legitimate relationship" in "client files" prior to Littler's receipt of an executed file transfer authorization from the clients and prior to said employees giving notice of their intent to leave the firm. *Disaster Servs.*, 228 Ga. App. at 741. Despite that, Polsinelli knowingly and covertly collaborated with Mr. Spinola and Ms. Mann on the siphoning of Littler's clients and proprietary information. (Melissa Mann Exit Interview, Mann Decl. ¶ 18, Ex. R.); (Mann Denise Drake 12/20/21 email, Decl. ¶ 18, Ex. Q).

Further, Mr. Spinola's and Ms. Mann's communications with Polsinelli reveal a concerted effort to provide Polsinelli with confidential, proprietary and trade secret information from the Toolkit. (Mann Decl., Ex. S at 52:3-54:16, 64:18-65:7, 142:4-14); (Mann Decl. ¶ 18, Exs. L, M, N, O, P.) These actions show Polsinelli was acting with malice when it induced the breach which injured Littler. *Disaster Servs.*, 228 Ga. App. at 740.

---

GTSA to preempt claims for the misappropriation of any information, 'it could have and should have said so.'" (citing *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 312 Ga. 350, 358, 862 S.E.2d 295, 301 (2021)))

### b.    Likelihood of Success on Misappropriation of Trade Secrets and Proprietary Information in Violation of Georgia Trade Secrets Act (Count VII)

"The Georgia Trade Secrets Act authorizes injunctive relief for an actual or threatened misappropriation of a 'trade secret,' which 'means information including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which: (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'" *Avnet, Inc. v. Wyle Labs.*, 263 Ga. 615, 616 (1993).

Littler's Toolkit is a compilation of specially developed documents and curated content for the home care industry available through paid subscriptions or an attorney-client relationship with Littler. (Vaughn Dec. ¶¶ 6-12.) Its content is not generally known, and it is subject to the Toolkit EULA, clickwrap agreement, copyright notice, and Littler's firm policies regarding confidentiality and use. (*Id.*) Moreover, the Toolkit subscriber lists Mr. Spinola provided to Polsinelli contained subscriber details including pricing and renewal data that unquestionably qualifies

- 15 -

as trade secrets. (Mann Decl. ¶ 15, Ex. J); *see Wyle Labs.*, 263 Ga. at 616; *Chef Merito v. Javier Gonzalez*, No. 1:20-cv-1242-AT, 2020 U.S. Dist. LEXIS 171934, at *22 (N.D. Ga. Aug. 19, 2020) ("tangible lists containing specific information regarding an employer's actual customers constitute 'trade secrets' as defined in the GTSA"); *Becham v. Synthes (U.S.A.)*, No. 5:11-CV-73 (MTT), 2011 U.S. Dist. LEXIS 103841, at *24 (M.D. Ga. Sep. 14, 2011).

Further, any claim that Polsinelli may properly reverse engineer "client files" containing Littler's Toolkit content and resell it as the same or substantially same content but under the POSH brand  is expressly negated by the Toolkit EULA discussed in Section I(A)(3) above. (Vaughn Decl. ¶¶ 12-13, Ex. A.)

### c.   Likelihood of Success on Civil Conspiracy (Count VIII)

"'A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means.'" *Savannah Coll. of Art & Design v. Sch. of Visual Arts*, 219 Ga. App. 296, 297 (1995) (quoting *U. S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 297 (443 S.E.2d 833) (1994)). The essential element is the common design, and after its formation, one "who knows of its existence and purposes and joins." *Id.*

The evidence above shows that Polsinelli joined the conspiracy to remove Littler work product and confidential and proprietary documents as discussed in

Sections I(B), I(C) and I(D) above. (Mann Dec. ¶ 18-19, Exs. L, M, N, O, P, Q, R, S.) Therefore, Littler will likely succeed on this claim.

>    ***d.*** **Likelihood of Success on Aiding and Abetting a Breach of Fiduciary Duty and Duty of Loyalty (Count IX)**

Polsinelli aided and abetted Mr. Spinola and Ms. Mann to breach their fiduciary duties to Littler. (*Id.*) A breach of fiduciary duty requires (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. *HCC Ins. Holdings, Inc. v. Flowers*, 237 F. Supp. 3d 1341, 1358 (N.D. Ga. 2017). Fiduciary relationships may be created when parties have a confidential relationship. *Harris v. Fulton-DeKalb Hosp. Auth.*, 255 F. Supp. 2d 1347, 1375 (N.D. Ga.), *aff'd*, 48 F. App. 742 (11th Cir. 2022). "Under Georgia law, a confidential relationship arises where 'one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.'" *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, No. 1:04-CV-1082-TWT, 2005 U.S. Dist. LEXIS 51313, at *31–32 (N.D. Ga. Sep. 13, 2005) (quoting O.C.G.A. § 23-2-58). Confidential relationships can arise in the employment context depending on the facts of each case. *Cochran v. Murrah*, 235 Ga. 304, 307–08 (1975)

Here, Littler gave Mr. Spinola and Ms. Mann access to proprietary and confidential information connected to their duties as Littler employees fully expecting they would comply with Littler's policies protecting that information. (Mann Decl. ¶ 19, Ex. S at 151:9-17.) Ms. Mann and Mr. Spinola breached their fiduciary duty to Littler by sending Littler's work product and confidential and proprietary documents to Polsinelli which Polsinelli has used to compete with Littler. (Sections I(B), I(C) and I(D) above.) Littler has been damaged by Polsinelli's actions through the continuing loss of Toolkit subscribers and revenue. (Section I(A)(2) above).

Polsinelli also aided and abetted both Ms. Mann's and Mr. Spinola's breach as outlined in Sections I(B) and I(C) above. To recover under aiding and abetting a breach of fiduciary duty claim a plaintiff must show: "(1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 25-26 (2006).

Polsinelli continues to benefit from Mr. Spinola's and Ms. Mann's misappropriation of Littler Information while they were still employed at Littler. (Vaughn Dec. ¶¶ 19-20); (Mann Decl. ¶ 18, Exs. L, M, N, O, P, Q.) These actions have caused damage to Littler and are not preempted by the GTSA because, even if these documents are not trade secrets (i.e., "non-trade secrets"), they are proprietary to Littler, unavailable publicly and hold significant economic value. *Angel Oak Mortg.*, 2022 U.S. Dist. LEXIS 53476, at *12. Therefore, Littler will likely succeed on this claim.

### e.    Likelihood of Success on Unjust Enrichment (Count X)

"A claim of unjust enrichment will lie if there is no legal contract and the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." *Campbell v. Ailion*, 338 Ga. App. 382, 386-87 (2016). "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." *Id.*

Polsinelli intentionally sought to use Littler Information to boost its home healthcare practice and POSH platform. (Mann Decl. ¶ 18, Exs. L-R.) Any benefit conferred upon Polsinelli by its concerted actions with Mr. Spinola and Ms. Mann

should equitably be returned to Littler. Moreover, this claim is not preempted by the GTSA because, even if these documents are not trade secrets (i.e., "non-trade secrets"), they are proprietary to Littler, unavailable publicly, and hold significant economic value. *Angel Oak Mortg.*, 2022 U.S. Dist. LEXIS 53476, at *12. Therefore, Littler will likely succeed on this claim.

### ii.   Littler is Suffering Irreparable Injury

A threat of irreparable harm is an essential element of injunctive relief. *Siegel*, 234 F.3d at 1176. District courts in the Eleventh Circuit consistently hold that loss of competitive advantage from the use and disclosure of confidential information constitutes irreparable harm. *See Priority Payment Sys., LLC v. Signapay LTD*, 161 F. Supp. 3d 1294, 1303 (N.D. Ga. 2016) (finding sufficient evidence of irreparable injury where defendants accessed plaintiffs' confidential and proprietary materials to leverage competitive advantage); *accord Arclin United States v. Vits Tech. Gmbh*, No. 1:20-cv-01197, 2020 U.S. Dist. LEXIS 256089, at *31 (N.D. Ga. Apr. 29, 2020). Littler experiences a continuing decline in Toolkit subscribers and associated revenue as discussed in Section I(A)(2) above that may reach obsolescence if permitted to continue at the current rate. Therefore, Littler is likely to be successful in satisfying its burden to make a prima facie showing of irreparable harm.

There is good cause for Littler's delay in seeking a TRO as throughout this entire period it has sought to resolve its claims outside the courthouse. (Wood Decl. ¶ 10; Mann Decl. ¶¶ 4-20, Exs. A-K.) Indeed, Littler did settle its claims against Ms. Mann. (Dkt. 55.) Once it became clear that a similar resolution was not possible with Polsinelli, Littler moved expeditiously to bring this motion for a TRO. Courts have held a delay in bringing a TRO is justified because of settlement efforts. *See, e.g., Larweth v. Magellan Health, Inc.*, 841 F. App. 146, 158-59 (11th Cir. 2021) ("district court considered Magellan's delay in the context of the parties' months-long discussions regarding the enforceability of the restrictive covenants and the possibility of a settlement. When those discussions broke down, Magellan filed its counterclaim and then its motion for preliminary injunction. Given this record, we cannot say that the district court's conclusion [granting a TRO] was an abuse of discretion."); *Boggs Contracting, Inc. v. Freismuth*, No. 6:21-cv-2088-CEM-EJK, 2021 U.S. Dist. LEXIS 252335, at *10-11 (M.D. Fla. Dec. 27, 2021) (good cause found for "two-month delay that . . . centered around an attempt to resolve the issues through mediation"); *Car Body Lab v. Lithia Motors*, No. 21-cv-21484-MORE, 2021 U.S. Dist. LEXIS 115493, at *29-30 (S.D. Fla. June 21, 2021) (delayed requests for Rule 65 relief may be excused with a "good explanation"). Further, public policy supports out of court resolutions, and this Court should find that Littler

was justified in delaying bringing this TRO because it was engaged in good faith settlement efforts. *See de Paz v. de Pineda*, 361 Ga. App. 293, 300 (2021).

### iii.      The Balance of Hardship Tips in Littler's Favor

Littler has expended substantial time, money, and other resources to develop its Information, which is essential to the continued success of Littler, particularly the home healthcare practice. (Dkt. 7-1, Perez Decl. ¶ 12); (Vaughn Decl. ¶ 11, 21.) Should Polsinelli be permitted to continue to exploit Littler's Information, Littler will suffer substantial losses and damage to its business. (Vaughn Decl. ¶¶ 14-17.) However, Polsinelli will suffer no legitimate hardship in the event a temporary restraining order is issued because it has no legal right to sell the misappropriated Information. *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1317 (N.D. Ga. 2017) (finding in a trademark infringement case where defendants unlawfully used plaintiff's proprietary information, defendants "could suffer no legitimate hardship by being forced to stop that which [they have] no right to do").

### iv.      The Relief Sought Serves the Public Interest

Injunctive relief here serves the public interest. Polsinelli has taken Littler's Information for its own benefit. (Vaughn Decl. ¶¶ 19-20.) The public has a vested interest in preserving a private party's right to its confidential and proprietary

information. *See Cunningham Lindsey U.S. LLC v. Box*, No. 1:18-cv-04346-MHC, 2018 U.S. Dist. LEXIS 224774, at *27 (N.D. Ga. Oct. 23, 2018).

**v.      The Equitable Relief Sought Is Appropriate**

The goal of the TRO and the Preliminary Injunction are preservation of evidence, preventing ongoing injury, and maintaining the status quo until the case is decided. A TRO and Preliminary Injunction will prevent ongoing injury from the concerted actions of Polsinelli, Ms. Mann and Mr. Spinola (as discussed in Section I(B), I(C) and I(D)) and maintain the status quo until the case is decided.

**C.      Expedited Discovery is Necessary to Remediate Ongoing, Irreparable Harm.**

Littler seeks limited discovery on an expedited basis through an order compelling that Polsinelli: (1) identify (a) all persons involved in the removal, transfer, sharing, use, adaptation or destruction of Littler Information; (b) all current or former Littler clients or Toolkit subscribers which Polsinelli alleges authorized use of their "client files" for commercialization in POSH; and (c) a Polsinelli 30(b)(6) witness to provide testimony regarding the development, content, pricing, marketing, revenue and subscriber base of POSH;  (2) permit Littler's 30(b)(6) deposition of Polsinelli along with additional fact witnesses identified; and (3) produce (a) all communications between or among Polsinelli, Angelo Spinola and Melissa Mann during the holdover period; (b) all documentation relating to

- 23 -

purported client authorizations for POSH; (c) a list of all documents offered in POSH at any time that were sourced in whole or part from Littler's IT systems, the Toolkit, or former Littler "client files"; and (d) to Littler's experts a complete and operational copy of POSH[4] (collectively, "Requested Discovery).

A district court has broad discretion over the management of pre-trial activities, including discovery. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). A party seeking expedited discovery must show good cause for its request. *Arista Records LLC v. Does 1-7*, No. 3:08-CV-18 (CDL), 2008 U.S. Dist. LEXIS 13831, at *3 (M.D. Ga. Feb. 25, 2008). The interests of justice compel expedited discovery in this case because good cause is shown and injury to Littler is immediate and the risk of that injury is greater than the injury Polsinelli might suffer if the expedited discovery is allowed. *See Benavides v. Gartland*, No. 5:20-cv-46, 2020 U.S. Dist. LEXIS 90686, at *10-11 (S.D. Ga. May 20, 2020); *Hope Lumber & Supply Co. v. San Antonio Lumber Co.*, No. 8:05-CV-1558-T-30TGW, 2005 U.S. Dist. LEXIS 59995, at *6-7 (M.D. Fla. Dec. 9, 2005) (allowing expedited discovery to further develop factual record); *TracFone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) (allowing expedited discovery for infringement

---

[4] Littler agrees that the copy of POSH deposited with its expert may be designated "Attorney and Expert Eyes Only" under the Protective Order.

claims); *see also* Specialty *Chemicals & Servs., Inc. v. Chandler*, No. 1:87CV-2338-MHS, 1988 U.S. Dist. LEXIS 16090, at * 13–4 (N.D. Ga. Sept. 26, 1988) (finding the threat of disclosure, destruction, or dilution of trade secrets causes irreparable injury justifying injunctive relief); *Variable Annuity Life Ins. Co. v. Joiner*, 454 F. Supp. 2d 1297, 1304 (S.D. Ga. 2006) ("resulting harm from lost accounts and lost customer goodwill and business is irreparable because it is neither easily calculable, nor easily compensable and is, therefore, an appropriate basis for injunctive relief").

Forcing Littler to wait until the commencement of general discovery will unreasonably pose harm to Littler. Polsinelli has no legal right to the Littler Information in its possession, custody, or control. Accordingly, the Court should not delay in instituting a process to ensure Polsinelli immediately halts its use of Littler's property and returns said property to Littler.[5]

### III.     CONCLUSION

For all of the foregoing reasons, Littler respectfully requests that the Court grant the relief requested.

---

[5] In the alternative, should the Court deny this motion, Littler requests that the Court order the immediate commencement of discovery for all purposes. Here, Defendant's answer would not be due until fourteen days after the Court rules on its omnibus motion to strike, for more definite statement and to dismiss. L.R. 26(A)(2); Fed. R. Civ. P. 12(a)(4). Even if granted in full, Defendant's motion would not result in a complete dismissal of Plaintiff's Complaint.

Dated:  July 29, 2022                        */s/ Dara D. Mann*

Dara D. Mann (Ga. No. 469065)
Francisco J. Rolon (Ga. No. 549139)
SQUIRE PATTON BOGGS (US) LLP
1201 W Peachtree St., Suite 3150
Atlanta, Georgia  30309
Tel.:  +1 678 272 3221
Fax:  +1 678 272 3211
Dara.Mann@squirepb.com
Francisco.Rolon@squirepb.com

David S. Elkins (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1801 Page Mill Road Suite, 110
Palo Alto, California 94304
Tel.: +1 650 856 6500
Fax: +1 650 843 8777
David.Elkins@squirepb.com

*Attorneys for Plaintiff*
*Littler Mendelson, P.C.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D), the undersigned certifies that the brief has been prepared with one of the fonts and point selections approved by the Court in L.R. 5.1 (B).

*/s/ Dara D. Mann*
 Dara D. Mann

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF *EX PARTE* MOTION**

**FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY**

**INJUNCTION, AND EXPEDITED DISCOVERY** to all counsel of record via the

Court's CM/ECF system.

This 29th day of July, 2022.

*/s/ Dara D. Mann*
  Dara D. Mann