# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LITTLER MENDELSON, P.C., a California Professional Corporation, | |
| Plaintiff, | |
| v. | Civil Action No.: 1:21-cv-3855-MLB |
| POLSINELLI P.C., a Missouri Professional Corporation, | |
| Defendant. | |

## POLSINELLI P.C.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION

ERIC L. BARNUM
Georgia Bar No. 039305
ebarnum@bakerlaw.com
GEORGIA L. TURNER
Georgia Bar No. 495910
gturner@bakerlaw.com

**BAKER & HOSTETLER LLP**
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia  30309-3676
Telephone: (404) 459-0050

*Counsel for Defendant Polsinelli P.C*

**<u>TABLE OF CONTENTS</u>**

**Page**

I.   INTRODUCTION ........................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................... 6

III. LEGAL STANDARD .................................................................... 11

IV.  ARGUMENT AND CITATIONS TO AUTHORITY ................................ 12

      A.   Littler Failed to Demonstrate a TRO and Preliminary
           Injunction are Proper....................................................12

           1.   Littler is Not Likely to Succeed on the Merits. ..............12

           2.   Littler's Year Long Delay in Filing the Motion
               Shows the Absence of any "Imminent Irreparable
               Harm." .............................................................17

           3.   The Public Interest Would be Disserved if the Court
               Issues a TRO or Injunction. ....................................19

           4.   The Potential Harm to Polsinelli Outweighs the
               Harm to Littler. .................................................20

           5.   The Proposed Order is Impermissibly Vague and
               Overbroad, Resulting in an Undue Prejudice to
               Non-Party Home Health Care Providers and
               Polsinelli. ..........................................................22

      B.   Littler Has Not Shown Good Cause to Depart from the
           Ordinary Discovery Schedule.........................................23

V.   CONCLUSION............................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agilysys, Inc. v. Hall*,
No. 1:16-CV-3557-ELR, 2016 WL 10988769 (N.D. Ga. Nov. 22, 2016) ............................................................................................... 24

*Alcoa, Inc. v. Universal Alloy Corp.*,
No. 1:15-CV-01466-ELR, 2017 WL 2791055 (N.D. Ga. Apr. 14, 2017) ............................................................................................... 13

*Church v. City of Huntsville*,
30 F.3d 1332 (11th Cir. 1994) .......................................................... 12

*Gwinnett Cnty. NAACP v. Gwinnett Cnty. Bd. of Registration & Elections*,
446 F. Supp. 3d 1111 (N.D. Ga. 2020) ............................................. 20

*Insight Tech., Inc. v. FreightCheck, LLC*,
280 Ga. App. 19 (2006) .................................................................... 16

*Johnson v. Pac. Union Fin., LLC*,
No. 1:18-CV-03295, 2018 WL 3949726 (N.D. Ga. July 27, 2018) ............ 11

*Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*,
No. 1:12-CV-1250-JEC-JSA, 2013 WL 12246988 (N.D. Ga. June 4, 2013) ............................................................................................... 24

*Morgan Stanley DW, Inc. v. Frisby*,
163 F. Supp. 2d 1371 (N.D. Ga. 2001) ............................................. 19

*Mustaqeem-Graydon v. SunTrust Bank*,
258 Ga. App. 200 (2002) .................................................................. 17

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
896 F.2d 1283 (11th Cir. 1990) ........................................................ 11

*Randstad Pros. US, LLC v. Tamberrino*,
   No. 1:18-CV-00940-ELR, 2018 WL 2760359 (N.D. Ga. Mar. 8,
   2018) .................................................................................................23

*Schiavo ex rel. Schindler v. Schiavo*,
   403 F.3d 1223 (11th Cir. 2005) ...............................................11, 12

*Seiko Kabushki Kaisha v. Swiss Watch Int'l, Inc.*,
   188 F. Supp. 2d 1350 (S.D. Fla. 2002) .....................................17, 18

*Siegal v. LePore*,
   234 F.3d 1163 (11th Cir. 2000) .........................................................17

*Slosberg v. Giller*,
   341 Ga. App. 581 (2017) ...................................................................16

*Swift, Currie, McGhee & Hiers v. Henry*,
   276 Ga. 571 (2003) ............................................................................13

*White v. Alcon Film Fund, LLC*,
   955 F. Supp. 2d 1381 (N.D. Ga. 2013)..............................................20

*Wreal, LLC v. Amazon.com*,
   840 F.3d 1244 (11th Cir. 2016) ...............................................17, 18

**Statutes**

O.C.G.A. § 10-1-761(2)(B)......................................................................14

O.C.G.A. § 10-1-761(4)............................................................................12

**Rules**

Fed. R. Civ. P. 26(d)(1).............................................................................23

## I.  __INTRODUCTION__[1]

Nearly a year after filing its Original Complaint, and over four months after adding Polsinelli as a defendant, Littler submits in its *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery (the "Motion") a theoretical claim that is not pled in its Second Amended Complaint ("Complaint") and asks the Court to take the drastic measure of granting a temporary restraining order ("TRO") for relief that is not requested in its Complaint.  This alone supports denial of Littler's Motion because, as a matter of law, Littler has no likelihood of success on the merits of a claim for relief that has not been pled.  As set forth below, Littler fails to meet any of the requirements for injunctive relief.  Littler's extraordinary motion should be denied, and this litigation should proceed in the ordinary course.

Littler's Complaint is (1) limited to claims based on documents improperly taken by their former employee/defendant Melissa Mann ("Mann") and other former Littler attorneys, and (2) limited to a request to enjoin Polsinelli from using

---

[1] Defendant appears and files the instant response in accordance with the local rule's typical response deadline and this Court's Order setting a hearing for August 17, 2022.  (*See* DE 85.) Defendant does not waive and specifically reserves the right to assert defenses—including defenses under Fed. R. Civ. P. 12 and affirmative defenses—in response to the allegations and claims asserted in Littler's Second Amended Complaint within the applicable deadlines for responding.

improperly taken/downloaded documents.  Presumably because Littler has known for over a year that Polsinelli has never seen or used any documents improperly downloaded by Mann or anyone, Littler has come up with a new (un-pled) theory. *See* Ex. 1, Gallagher Decl., ¶ 10.  It now asks the Court to enjoin Polsinelli from using the approximately 30,000 client file documents that Littler itself sent to Polsinelli over a year ago pursuant to routine client instructions when attorneys change firms. Littler's Complaint, however, (1) makes no mention of the client file documents that it sent to Polsinelli, (2) is absent of a claim that the client file transferred documents are Littler's trade secrets, and (3) provides no explanation of how Polsinelli's receipt from Littler and use of such documents could be misappropriation of a Littler trade secret.  Littler has not even made a prima facie showing that one such client document it sent to Polsinelli was a Littler trade secret or how Polsinelli's receipt and use equates to a misappropriation, let alone a substantial likelihood of success on the merits of such a claim.

Littler does not argue, and has put forth no evidence, that Polsinelli used any improperly downloaded documents to build Polsinelli's online document platform named Polsinelli's Online Solution for Homecare ("POSH").  They cannot–because

it did not happen.[2]  Also not at issue is the conduct that Littler alleges its former attorney Angelo Spinola ("Spinola") engaged in, including whether he took or downloaded documents.  Ex. 2, Spinola Decl., ¶ 8.  Polsinelli has never used any documents, or any portion of a document, taken or downloaded by any former Littler attorney or staff to create in whole or in part any document to be used by Polsinelli for POSH.  *Id.*

What is at issue is Littler's unpled claim of whether any of the client file documents that Littler was instructed by its clients to send to Polsinelli are Littler trade secrets and, if so, whether Polsinelli's receipt and use of the client file documents is a misappropriation of a trade secret.[3]

Littler, however, has not shown the Court that a single client file document is properly considered a "trade secret" or that Polsinelli's receipt and use of any of

---

[2] Littler has deposed Mann and forensically examined her electronic devices and has not provided the Court with any evidence Polsinelli viewed or received any Mann documents.  (*See* DE 81-1 pp. 6-7.)

[3] Importantly, Littler's definition of "Littler Information" has morphed throughout its pleadings.  Littler's definition in its Original and Second Amended Complaint is limited to documents downloaded by Melissa Mann.  (DE 1 ¶ 1; DE 57 ¶ 1.) The definition in its Memorandum of Law is limited to documents "improperly removed." (DE 81-1 p.1) Then, for the first time, Littler expands its definition of "Litter Information" in its draft TRO to include a new term – "Protected Material." (DE 81-2 ¶ 2.) Littler defines "Protected Material" to include client file documents and, as a result, seeks a ruling to enjoin Polsinelli from using the client file documents Littler sent to Polsinelli.

the documents equates to misappropriation.  Instead, Littler argues now in a sweeping fashion that all 30,000 documents that it provided in the client file transfers, without objections or contingencies, could contain its proprietary information.

Littler's Motion contains much false immediacy and is done to impermissibly restrain Polsinelli's lawful use of documents and shut down POSH in an anti-competitive manner, not to preserve any trade secrets.  Littler cannot deny that it voluntarily sent Polsinelli approximately 30,000 client file documents, without caveats, over one year ago.  Further, Littler has known that Polsinelli has been using the client file documents for clients and subscribers of POSH since August 2021, when counsel for Polsinelli informed Littler's counsel on the phone and in a follow up letter.  Polsinelli has known since early 2021 that Littler was concerned about its former employee's conduct of downloading documents and repeatedly assured Littler that it had not – and would not – receive such documents.  During those discussions, Polsinelli expressly communicated to Littler on numerous phone calls and in writing of Polsinelli's intentions regarding client file transfer documents to make sure that Littler had no objection.  *See* Ex. 1, Gallagher Decl., ¶¶ 8-14.  Littler – despite written and oral communications from Polsinelli of what it intended to do – never objected to Polsinelli's use of any of the documents from the client files it sent to Polsinelli.

Littler's year-long delay in seeking injunctive relief demonstrates that the harm it complains of is neither imminent nor irreparable, and at a minimum Littler is equitably estopped from seeking the relief sought.  In addition, the harm complained of – loss of subscribers – is merely the natural result of permitted attorney competition, not anything Polsinelli did improperly.  Littler has also failed to show that it is likely to succeed on the merits.  Further, the public interest (especially the thousands of home health care providers that rely on documents provided by Polsinelli via POSH and their thousands of customers) would be disserved if the Motion were granted, and the potential harm to Polsinelli that would result for not being able to comply with its obligations to clients far outweighs that to Littler.

Finally, the proposed order submitted by Littler is impermissibly overbroad and lacks the specificity required for injunctive relief under Fed. R. Civ. P. 65(d), including to the extent that it claims that over 30,000 documents that it sent to Polsinelli allegedly constitute "trade secrets."  Littler makes this claim even though many of those files are indisputably not "trade secrets" and constitute materials that Littler has repeatedly confirmed it has no proprietary interest in.  For these same reasons, the motion for expedited discovery should be denied, because there is not good cause for departing from the ordinary discovery schedule.  Accordingly, the Motion should be denied in full.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Former Littler attorneys/staff joined Polsinelli.   During the Fall of 2020, attorney Spinola expressed interest in moving from Littler to Polsinelli along with other Littler attorneys and staff. Ex. 2, Spinola Decl., ¶¶ 5-6.   In connection with those discussions, Spinola described his clients' need for an online document platform that would provide home health care franchisors and franchisees with access to documents and various forms, templates, and industry related information. *Id.*   At Littler, the document platform was called Toolkit.   Spinola, however, was not satisfied with Toolkit because it wasn't meeting his clients' needs.   *Id.*   Polsinelli had been working on something similar and, therefore, part of the recruiting process involved discussions as to whether Polsinelli would independently invest the time and money to develop an online document platform for Spinola's clients' needs.   *Id.* at ¶ 6.   Spinola and others left Littler and joined Polsinelli between February and March of 2021.   *Id.* at ¶¶ 6-7.

Polsinelli's POSH.   Polsinelli developed its online document platform and named it POSH.   POSH was created and designed completely independent from any Littler proprietary data or information.   *Id.* at ¶¶ 8, 16, 28-29.   Littler does not claim that the design or programming/coding of POSH is identical or even similar to Littler's Toolkit – or that Polsinelli improperly used any proprietary information to

design and develop POSH.  POSH's user interface and the experience of the user is completely different from Toolkit – *i.e.*, there is no claim that the POSH platform is the result of misappropriated coding or trade secret information.  Other than the display and user interface, POSH is simply an online platform for users to login and view or obtain examples of standard legal forms and documents (such as employee handbooks, workplace policies, and industry-related information).  *Id.* at ¶ 29.

Polsinelli's dealings with Littler since March 2021.  Shortly after Polsinelli hired Mann, Littler informed Polsinelli of its concerns that Mann downloaded Littler documents before she left Littler and that possibly other Littler personnel had provided improperly downloaded documents to Polsinelli.  Polsinelli investigated and informed Littler that it had not, and would not, receive any documents downloaded by Mann or any former Littler attorney or staff. Ex. 1, Gallagher Decl., ¶ 10.  Polsinelli also informed Littler that it discovered that during the recruiting and transition process from Littler to Polsinelli, that Spinola had provided three documents that identified clients and pricing information that Littler may view as confidential.  *Id.* at ¶¶ 4, 6. Polsinelli informed Littler that it had not, and would not, use any of the information contained in the documents other than to use the client names to check for conflicts of interest.  *Id.* at ¶ 6.

From the spring of 2021 through the summer of 2021, Polsinelli continued its discussions with Littler about Littler's concerns regarding improperly downloaded documents. *Id.* at ¶¶ 6-14. Littler communicated to Polsinelli that it was aware of Polsinelli's development of the POSH document platform and that Littler had concerns that the documents Mann or others improperly downloaded while at Littler may be used by Polsinelli on POSH. *Id.* at ¶ 7. Polsinelli had never seen – nor would intentionally view – any documents that were improperly downloaded by any former Littler attorney or staff and, therefore, Polsinelli continued to tell Littler that it had not received any documents from any former Littler attorney or staff to be used on POSH or otherwise. *Id.* at ¶ 10.

As is routine with any lateral attorney move, by the summer of 2021 numerous Spinola clients had instructed Littler to transfer thousands of client file documents to Polsinelli. Ex. 2, Spinola Decl., ¶ 23. On August 23, 2021, Polsinelli sent a letter to Littler's counsel and explained its intent to use client file transfer documents:

> [I]t is Polsinelli's understanding that Littler has no objection to Polsinelli's use of client files Littler transferred to Polsinelli which is consistent with our understanding that the client files (including any which may also reside in Littler's HomeCare Toolkit) would not be subject to copyright protection by Littler because they either belong to the clients, or are forms or originated from a source other than Littler. If, however, Littler takes the position that Polsinelli is somehow restricted in the use of any of the documents Littler has transferred, then we cannot address those concerns without Littler specifically identifying the transferred documents it claims to be Littler original works subject to legal protection by Littler. Without Littler specifically identifying

such documents, Polsinelli will rely upon Mr. Spinola's understanding as to the origin of the documents.

Ex. 1, Gallagher Decl., ¶ 8.  In response, on August 26, 2021, Littler's counsel made it clear that Littler was not concerned about the documents that it sent to Polsinelli when she sent a response letter that stated:

> Mr. Spinola improperly transferred multiple Littler files to a personal storage device and personal email account. . . It is these improperly transferred documents that are the subject of Littler's inquiry with regard to POSH.  For the removal of any doubt, please confirm that POSH does not, has not and will not contain any of the documents improperly removed by Mr. Spinola and his team from Littler's premises and IT systems.

*Id.* at ¶ 9.  On August 30, 2021, Polsinelli's counsel informed Littler's counsel that POSH did not, and would not, contain any documents improperly removed by former Littler employees but that it would contain material from the client file transfer documents and new content created by Polsinelli.  *Id.* ¶ 10.

In a follow-up letter to Littler's counsel on September 2, 2021, Polsinelli again brought to Littler's attention Polsinelli's planned use of documents that Littler had transferred to Polsinelli and stated:

> **The transferred documents may be stored on POSH as part of a document repository for those clients or reside on POSH in the form of a template designed to provide information and forms for clients and subscribers**. Polsinelli also intends to use the documents transferred to it by Littler for representation of other clients consistent with the long-standing industry practice in which lawyers use documents utilized for one client as a base for creating documents to be utilized for different clients – **whether it be**

**by posting versions of those documents to POSH to be accessed by different clients and their designees or otherwise.**  [emphasis added]

*Id.* at ¶ 12.  And again, in a follow-up call on September 7, 2021, Polsinelli explained its intended use of client file transfer documents on POSH, and Littler raised no objections.  *Id.* at ¶ 13.   Instead, ten days later on September 17, 2021, Littler filed this lawsuit against *only* Melissa Mann based on her downloading documents while she was an employee at Littler. (*See* DE 1.)  No claims were made against Polsinelli – and Littler never expressed any objection to Polsinelli's use of client file transferred documents for any purpose, including using such documents to create templates to be used on POSH.

    <u>Polsinelli's reliance on Littler's statements and resulting harm if Littler's requested relief is granted</u>.  Polsinelli has invested hundreds of thousands of dollars and thousands of hours to develop the POSH platform.  Ex. 2, Spinola Decl., ¶¶ 28-29.  Polsinelli has independently created entirely new documents to make available for POSH users and has relied in part on client documents sent to Polsinelli pursuant to numerous clients' instructions to Littler to transfer their documents to Polsinelli.  *Id.* at ¶¶ 29-30.  It would take hundreds of hours to determine which documents on POSH may contain portions of client documents sent to Polsinelli by Littler.  *Id.* at ¶ 30.  As a result, if Polsinelli is ordered to not use the client documents Littler sent to Polsinelli, Polsinelli would be forced to terminate every user's access to all of the

documents on POSH. *Id.* Such an order would interfere with Polsinelli's ability to provide legal services and may subject Polsinelli to claims by the thousands of POSH users from their loss of access to documents needed for their business. *Id.*

## III.    LEGAL STANDARD

In order to obtain a TRO, the movant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the injunction is not granted; (3) that the threatened injury to Plaintiff absent an injunction outweighs the damage to Defendants if an injunction is granted; and (4) that granting the injunction would not be adverse to the public interest." *Johnson v. Pac. Union Fin., LLC*, No. 1:18-CV-03295, 2018 WL 3949726, at *1 (N.D. Ga. July 27, 2018) (citations omitted).  Similarly, to justify a preliminary injunction, the movant must prove the same four criteria.  *See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990).  "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant 'clearly carries the burden of persuasion' as to the four prerequisites."  *Id.* at 1285 (citations omitted); *accord Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d1223, 1225-26 (11th Cir. 2005) (finding no abuse of discretion in denying petition for TRO because plaintiff failed to meet the likelihood of success criterion despite showing the other three prerequisites).  As explained below, Littler

has not established any of the four criteria necessary to support its extraordinary request for temporary and preliminary injunctive relief.

### IV.   ARGUMENT AND CITATIONS TO AUTHORITY

#### A. Littler Failed to Demonstrate a TRO and Preliminary Injunction are Proper.

##### 1.  Littler is Not Likely to Succeed on the Merits.

"Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Schiavo ex rel. Schindler*, 403 F.3d at 1226 (citations omitted); *accord Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).  Failure to meet this initial hurdle relieves the court from considering the remaining factors. *Church*, 30 F.3d at 1342.

Primarily at issue is Littler's misappropriation of trade secrets claim, O.C.G.A. § 10-1-760 *et seq.* (Count VII).  To prevail on this claim, Littler must demonstrate both that the information in question constitutes a "trade secret" as defined by O.C.G.A. § 10-1-761(4) and that Polsinelli misappropriated that trade secret.  A "trade secret" is "information, without regard to form . . . which is not commonly known by or available to the public and which information: (A) [d]erives economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value

from its disclosure or use" and "(B) [i]s the subject of efforts . . . to maintain its secrecy." O.C.G.A. § 10-1-761(4).

Littler has not shown that even a single document in question is a trade secret. *See* Ex. 2, Spinola Decl., ¶¶ 12-13, 24-27. In fact, the whole purpose of these documents is that they not be kept secret; Littler actively seeks clients and subscribers to view and purchase access to its Toolkit documents. (DE 81-1 pp. 2-3; DE 81-3 at ¶ 12.)[4] The fact that a subscriber may have to purchase a subscription to view the document does not negate the fact it is not secretive. *See Alcoa, Inc. v. Universal Alloy Corp.*, No. 1:15-CV-01466-ELR, 2017 WL 2791055, at *3 (N.D. Ga. Apr. 14, 2017) (plaintiff's alleged trade secret was "readily accessible in text books and over the Internet" and "a standard practice used by other manufacturers and could be re-produced by others if they had the financial means to do so."). In addition, the purported trade secrets are overwhelmingly client documents as a matter of law, so clients may—and do—share them freely. *See, e.g.*, *Swift, Currie, McGhee & Hiers v. Henry,* 276 Ga. 571, 571 (2003). Some clients have even asked

---

[4] Littler cites its end user licensing agreement ("EULA") to argue the documents are trade secrets (DE 81-1 p. 4; DE 81-3 at ¶ 13), but notably does not state that Polsinelli violated it because it could not. Polsinelli has never agreed to its terms. Importantly, the EULA does not contain a statement that the subscriber must keep the documents a secret; rather, the subscriber just cannot copy the document. (DE 81-1 p. 4.) There is no element of "trade secrecy" in the EULA supporting Littler's claim.

that certain documents be shared freely in their respective industries because standardization of certain types of documents benefits the industries as a whole. Ex. 2, Spinola Decl., ¶ 4; *see also* Ex. 3, Haynes Decl., ¶ 11; Ex. 4, Coccaro Decl., ¶ 12; Ex. 5, Stanton Decl., ¶ 11. Documents that Littler has no right to control, and that are shared freely, cannot be trade secrets.

In this case, Littler is also unlikely to succeed on the merits because Polsinelli's alleged actions do not satisfy the definition of "misappropriation." Polsinelli did not acquire the documents making up the alleged "trade secrets" through "improper means."[5]   To the contrary, Littler transferred around 30,000 documents to Polsinelli. Moreover, Polsinelli's use of the documents has not been hidden or secretive without the knowledge of Littler; rather, Polsinelli informed Littler expressly how Polsinelli intended to use the documents, and Littler did not object. Ex. 1, Gallagher Decl., ¶¶ 8-9, 11-14; O.C.G.A. § 10-1-761(2)(B) (noting the party misappropriating the trade secret must know *at the time of disclosure or use* that there was a duty to maintain secrecy). Even the three documents that Littler

---

[5] Littler argues Spinola or Mann siphoned Littler work product and proprietary information including Toolkit documents into purported "client files" to be able to transfer them secretly to Polsinelli. (DE 81-4 at ¶ 11.) Yet, tellingly, Littler did not point to a single document that was allegedly improperly transferred as a client document nor did Littler state whether those purportedly improperly siphoned documents were even transferred by Littler to Polsinelli.

can identify specifically as their alleged proprietary information, Polsinelli informed Littler about, not vice versa.  (DE 81-1 p. 7; DE 81-5 at ¶ 8.); Ex. 1, Gallagher Decl. ¶ 4, 6.  In summary, Littler is unlikely to succeed on the merits of its trade secret claims because it is unable to establish that Polsinelli's alleged actions rise to the level of "misappropriation," and that the documents are Littler's "trade secrets."

Littler's remaining claims are not a proper basis for the injunctive relief sought.  The claims relate to conduct by Littler's former employees and Polsinelli prior to their joining Polsinelli and do not form the basis of any aspect of Littler's trade secret misappropriation claim regarding client file transferred documents. Even if such claims could form the basis for injunctive relief, Littler is also not likely to prevail[6] and has put forth no credible evidence in support of those claims.  As explained in detail in its pending Omnibus Motion to Dismiss, Littler's tortious interference with business relations (Count VI) and unjust enrichment (Count X) claims are fully preempted by the Georgia Trade Secrets Act and therefore due to be dismissed.  (*See* DE 77 at p. 5, 77-1 at pp. 13-17.)  Littler is also not likely to prevail on the tortious interference with contractual relations claim (Count V).  Littler must show the defendant: (1) engaged in improper action or wrongful conduct without

---

[6] Counts I-IV are brought exclusively against former defendant Mann and are subject to a pending Omnibus Motion to Strike.  (*See* DE 77 at pp. 2-4, 77-1 at pp. 4-7.)

privilege; (2) acted purposefully and with malice with the intent to injure; (3) induced a breach of contractual obligation; and (3) the tortious conduct proximately caused its damage. *See Slosberg v. Giller*, 341 Ga. App. 581, 584 (2017). Littler has not put forth any credible evidence that anyone at Polsinelli was acting purposefully with malice with intent to injure Littler or induced any alleged breaches by former Littler employees. Conclusory statements and extrapolations do not meet Littler's burden of showing likelihood of success.

Littler will not prevail on its aiding and abetting breach of duty claim (Count IX). Littler must show: (1) through improper action or wrongful conduct and without privilege, Polsinelli acted to procure a breach of Angelo or Mann's fiduciary duty to Littler; (2) with knowledge that Angelo and Mann owed Littler a fiduciary duty, it acted purposefully and with intent to injure; (3) Polsinelli's wrongful conduct procured a breach of fiduciary duty; and (4) Polsinelli's tortious conduct proximately caused damage to Littler. *See Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 25-26 (2006). Littler does not cite to any evidence Polsinelli aided and abetted former Littler employees to breach their duties to Littler. Instead, Littler makes the conclusory assertion Littler acted with malice and with the intent to injure Littler. There is no evidence to support these assertions, making it unlikely Littler will prevail on this claim.

16

Littler will not prevail on its civil conspiracy claim (Count VIII).  To prevail, Littler must show a "combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means."  *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (2002) (citation omitted).  Littler must show that Polsinelli, along with others, "acting in concert, engaged in conduct that constitutes a tort."  *Id.*  "Absent the underlying tort, there can be no liability for civil conspiracy."  *Id.*  Because none of Littler's other tort claims have merit, the claim for civil conspiracy must fail.  In addition, there is no evidence Polsinelli acted in concert with others unlawfully.  Littler's blanket citation to over eight exhibits to Dara Mann's declaration do not evidence a conspiracy.  Littler is not likely to prevail on this claim.

### 2. Littler's Year Long Delay in Filing the Motion Shows the Absence of any "Imminent Irreparable Harm."

The showing of irreparable injury is "the *sine qua non* of injunctive relief." *See Siegal v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). "[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."  *Id.* (citations omitted).  A "failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm."  *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir.

2016) (no irreparable harm where motion "relied exclusively on evidence that was available to [the plaintiff]" five months prior to the time the motion was filed); *Seiko Kabushki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) (noting that a plaintiff's "dilatory prosecution of its rights somewhat vitiates the notion of irreparable harm. . . and undercuts any sense of urgency").

Littler's delay in seeking the injunctive relief requested is sufficient to deny the injunction, and at a minimum, it severely undercuts its claim of irreparable harm and any need for immediate relief.  For example, as soon as "February 17, 2021, Littler immediately began undertaking actions to identify and seek the return of Littler information improperly transferred or removed . . . and provided to Polsinelli."  (DE 81-4 at ¶ 9.)  On March 23, 2021, Littler sent a cease and desist letter to Polsinelli's former counsel.  (DE 81-5 at ¶ 4(b).)  Shortly thereafter, on March 31, 2021, Littler's counsel sent an evidence preservation letter stating that "the Polsinelli firm is a potential party to the dispute."  (*Id.* at ¶ 7, Ex. C.)  On June 23, 2021, Littler sent a letter to Polsinelli regarding its marketing of POSH.  (*Id.* at ¶ 4(g).)  In sum, as a court aptly put it, the facts show Littler "pursued its preliminary-injunction motion with the urgency of someone out on a meandering evening stroll rather than someone in a race against time."  *Wreal, LLC*, 840 F.3d at 1246.

Trying to minimize these facts, Littler argues these conversations and efforts were done under the guise of settlement discussions, in an effort to extrajudicially resolve the dispute, and/or based on misrepresentations by Polsinelli.  (*See* DE 81-1 at p. 21; DE 81-5 at ¶¶ 4, 20.)  Not so.  Polsinelli and Littler were not in litigation until March 2022 when it was named a defendant, and at no point prior were the parties in a settlement posture. Polsinelli also never misrepresented its intentions with the client file transfer documents.  Instead, it explained unequivocally on September 2, 2021, that it intended to use those documents provided by Littler to Polsinelli in response to client file transfer instructions on POSH.  *See* Ex. 1, Gallagher Decl., ¶ 12.  Any suggestion that Littler is now completely surprised and in need of immediate relief is negated by the facts.

### 3.  The Public Interest Would be Disserved if the Court Issues a TRO or Injunction.

Littler argues–in no less than three sentences–that the public would be served by entry of an injunction.  In actuality, the public, more specifically, non-party home health care providers utilizing Polsinelli's legal services and POSH would be severely harmed if the Court enjoined Polsinelli's use of client file transfer documents that it has converted into documents to be stored on POSH for client or subscriber use.  *See* Ex. 3, Hayes Decl., ¶ 9; Ex. 4, Coccaro Decl., ¶ 9; Ex. 5, Stanton Decl. ¶ 8 (stating that loss of access to POSH, even for a few days, would be "highly

disruptive" to active POSH subscribers and in turn the subscriber's ability to provide home care services to clients); *Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1382 (N.D. Ga. 2001) (denying TRO motion based in part on the harm to broker clients, which were compared to the attorney-client relationship, because "the inability of a client to consult a trusted advisor for even a single day could result in enormous financial losses to the client"); *cf. White v. Alcon Film Fund, LLC*, 955 F. Supp. 2d 1381, 1385 (N.D. Ga. 2013) ("Courts have held that in the absence of a clear-cut case of infringement, the public interest lies with allowing continued competition between the products until after a full adjudication of the issues involved."). There is significant public interest in ensuring that home health care provider's businesses are not disrupted.

### 4. The Potential Harm to Polsinelli Outweighs the Harm to Littler.

In considering a request for injunctive relief, "[t]he Court must analyze whether the 'threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party.'" *Gwinnett Cnty. NAACP v. Gwinnett Cnty. Bd. of Registration & Elections*, 446 F. Supp. 3d 1111, 1126 (N.D. Ga. 2020) (citation omitted). Here, Littler permitted Polsinelli to rely on its silence when it informed it of its intent to use client file transfer documents in creating POSH and provide legal services to existing and new clients. *See* Ex. 1, Gallagher Decl.,

¶¶ 8-9.  On August 23, 2021, Polsinelli informed Littler's counsel, explicitly, that it would use the "client files Littler transferred to Polsinelli [without objection by Littler,] which is consistent with our understanding that the client files (including any which may also reside in Littler's HomeCare Toolkit) would not be subject to copyright protection by Littler because they either belong to the clients, or are forms or originated from a source other than Littler."  *Id.* at ¶ 8.  Littler's counsel did not object to this.  *Id.* at ¶ 9.  Again, in an August 30, 2021 call, Polsinelli informed Littler's undersigned counsel it would be using client file transfer documents on POSH.  *Id.* at ¶ 10.  Similar communications by Polsinelli, and failure to object by Littler, occurred in the following days.  *Id.* at ¶¶ 12-14.

If Polsinelli is enjoined from using POSH to service clients, it may not be able to fulfill its duties to its clients.  Further, thousands of subscribers to POSH may have claims against Polsinelli for loss of access to documents necessary for their business and reimbursement of payments for access.

Littler has not shown a single document that is allegedly a trade secret that Polsinelli is using improperly and inconsistent with how Polsinelli described how it would use the documents in August and September of 2021.  It has therefore failed to show an immediate and irreparable harm that must be enjoined.  On the other hand, Polsinelli faces serious potential harm if an injunction is granted because of

its reliance on Littler's failure to object and its substantial, independent efforts to develop POSH.  Ex. 2, Spinola Decl., ¶¶ 28-32.

### 5. The Proposed Order is Impermissibly Vague and Overbroad, Resulting in an Undue Prejudice to Non-Party Home Health Care Providers and Polsinelli.

Lastly, the proposed order submitted by Littler fails to satisfy the requirements of Fed. R. Civ. P. 65(d).  Federal Rule 65(d) provides that "[e]very restraining order must . . . (B) state its terms specifically; and (C) describe in reasonable detail–and not by referring to the complaint or other document–the acts of acts restrained or required."   As written, it is near impossible for Polsinelli to comply.  Littler does not identify the specific documents it believes constitute trade secrets.  Instead, Littler broadly defines "trade secrets" as all 30,000 client documents that Littler itself sent to Polsinelli.  The order would extend to every document, even those indisputably not capable of being "trade secrets."  Ex. 2, Spinola Decl., ¶¶ 24-27.

These documents (*id.*), as a small sample of non-Littler, non-"trade secret" documents that Littler seeks to enjoin use of, should not be subject to a TRO.  The proposed order's overly broad application and its vague definition of "trade secrets" fails to make necessary distinctions in documents properly used by Polsinelli and

those Littler argues are its alleged trade secrets.[7]   On its face, the proposed TRO would place undue restrictions on Polsinelli's use of its own or its client's documents.  Accordingly, the proposed order should not be entered.

### B. Littler Has Not Shown Good Cause to Depart from the Ordinary Discovery Schedule.

Relatedly, Littler has not shown good cause exists for expedited discovery. According to Fed. R. Civ. P. 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."  To obtain expedited discovery, the burden is on the moving party to show good cause for departing from the usual discovery procedures.  *See Randstad Pros. US, LLC v. Tamberrino*, No. 1:18-CV-00940-ELR, 2018 WL 2760359, at *1 (N.D. Ga. Mar. 8, 2018).

There is no good cause to expedite discovery because Littler delayed bringing this suit against Polsinelli, negating any argument that immediate discovery is

---

[7] For further illustration, Littler asks this Court to order Polsinelli from "participating in competitive activities involving the use of any Protected Material for Polsinelli's benefit or the benefit of Littler's competitors."  (DE 81-2 at ¶ 3.)  Not only does Polsinelli have no control over the unidentified and vaguely described "Littler[] competitors", the request to stop Polsinelli from engaging in "competitive activities" is extremely broad and vague and could be read to subject Polsinelli to a court order enjoining it from practicing law on behalf of its clients.

necessary,[8] and because the discovery requests are overly broad, making it unduly

burdensome and prejudicial for Polsinelli to comply with such broad requests in a

short time frame.   *See Agilysys, Inc. v. Hall*, No. 1:16-CV-3557-ELR, 2016 WL

10988769, at *2 (N.D. Ga. Nov. 22, 2016).   The very documents at issue were

provided *willingly* to Polsinelli from Littler one year ago.   *See supra,* Section

IV(A)(2).   Yet, Littler now asks the Court to order Polsinelli to, for example, within

one day of the order, identify all persons involved in the "removal, transfer, sharing,

use, adaption or destruction of Littler Information – whether from Littler's IT

systems, the Toolkit or former Littler 'client files' – for POSH" and designate its

Rule 30(b)(6) witness.[9]  (DE 81-2 at ¶ 4(i).)  Within three days of the order, Polsinelli

could be ordered to produce "a list of all documents offered in POSH at any time

that were sourced in whole or part from Littler's IT systems, the Toolkit or former

Littler 'client files' that also identifies the date said documents were first loaded into

---

[8] In considering the need for expedited discovery, the Court should not credit Littler's conclusory allegations that it must order Polsinelli to preserve the very documents that it alleges Polsinelli is actively using to misappropriate its "trade secrets." (*See* DE 81-2 at ¶ 2.)  As a sophisticated law firm, Polsinelli understands and takes seriously its duty to preserve evidence, and just as importantly, client files. Littler has provided no evidence that its allegedly proprietary documents in Polsinelli's possession were not preserved.

[9] This unnecessarily rushed designation would result in a deposition by a representative of Polsinelli that serves to bind the corporation throughout the remainder of the litigation.  *See Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*, No. 1:12-CV-1250-JEC-JSA, 2013 WL 12246988, at *5 (N.D. Ga. June 4, 2013).

POSH" and a "complete and operational copy of POSH including all associated data and metadata[.]" (*Id.* at ¶ 4(iii).)  This request is near impossible to comply with in the time suggested considering it is seeking a full forensic report of POSH and the thousands of documents contained on it.

Littler's blanket assertions that following the ordinary discovery timeline will "unreasonably pose harm to Littler", the "interests of justice compel expedited discovery", and "injury to Littler is immediate" are unsupported, conclusory, and fail to reflect its one-year delay in bringing this suit.  If Littler really feared such injury, it would have brought this Motion contemporaneous with filing this lawsuit on September 17, 2021, because it was on notice of Polsinelli's intended use of the client file transfer documents.  *See* Ex. 1, Gallagher Decl., ¶¶ 8-14.  Instead, it armed itself with discovery during its litigation with Mann and now brings this one-sided expedited discovery request.  This Court should deny the Motion and permit discovery to proceed in the timeline contemplated by the federal and local rules.

## V.   <u>CONCLUSION</u>

For the reasons provided herein, Littler's Motion should be denied in full. Littler has not demonstrated that extraordinary relief should be granted.

Respectfully submitted this 12th day of August, 2022.

/s/ Georgia L. Turner
Eric L. Barnum
Georgia Bar No. 039305
ebarnum@bakerlaw.com
Georgia L. Turner
Georgia Bar No. 495910
gturner@bakerlaw.com

**BAKER & HOSTETLER LLP**
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia  30309-3676
Telephone: (404) 459-0050

*Counsel for Defendant Polsinelli P.C*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that this document was prepared using 14-point Times New Roman font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

Respectfully submitted this 12th day of August, 2022.

*/s/ Georgia L. Turner*
Georgia L. Turner
Ga Bar No. 495910

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned counsel hereby certifies that, on this day, the foregoing POLSINELLI P.C.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

This 12th day of August, 2022.

*/s/ Georgia L. Turner*
Georgia L. Turner
Ga Bar No. 495910